## No. 11,431.

### SUCCESSION OF JUMONVILLE MORVANT.

1. Where, after a succession has been placed under a regular administration an olographic will of the deceased is found bequeathing the usufruct of certain specific property to a particular person, and this will is, at the instance of the legatee, offered for probate by an attorney at law and probated over the opposition of the heirs and the administrator, remuneration for such services must be sought not from the succession, but the particular legatee.

2. To sustain a claim made by the mistress of a man that she is entitled to one-half of all the property left by him at his decease, on the ground that it was the result of their joint thrift and industry and economy, where there is no evidence to show that she furnished a cent for the purchase of the property,

but, on the contrary, occupied toward him the relation of his servant, would be to place the mistress substantially on the footing of a wife. Such a claim is sustainable neither by law nor by morals.

*Held* on contest upon the will—

1. That it was throughout a bequest in usufruct for life.
2. That it was a special legacy of specifically described objects and not a universal legacy or a legacy under a universal title.
3. That the objects bequeathed were those in existence at the date of the will and not at the date of the death of the testator.
4. That the executor, being charged with the duty of seeing that the proper security should be given by the usufructuaries under the law, is entitled to commissions upon the appraised value of the property so bequeathed.

APPEAL from the Eighteenth District Court, Parish of Lafourche. *Guion, J.*, in place of *Caillouet, J.*, recused.

*Thomas A. Badeaux* and *Arthur F. Knobloch* Attorneys for Executor, Appellant:

1. The judgment of the lower court should be amended so as to restore fees of counsel and executor's commission as fixed in the account of executorship; that the land shall be given to Frank Reese in usufruct, during life, on his furnishing security required by law.
2. A legacy of certain specific and designated objects is a special legacy and not a universal legacy, or legacy under a universal title.
3. A legacy of designated objects to A and B, for " *longs they live* " and for *"they life times"* does not transfer the objects in full ownership and can only be interpreted as the constitution of an usufruct for life.
4. In the interpretation of a will, the intention of the testator must govern, and to arrive at the intention effect must be given to every clause and every expression in the will. Qualifying words used by the testator to restrict the extent of the legacy can not be disregarded.
5. A special legatee has no concern to question any item in the executor's account which is not covered by the terms of his legacy, and when his legacy is paid him in full.
6. A concubine, whose status is fixed by a judgment in a suit wherein she was plaintiff and the succession of the deceased was defendant, can not be heard to claim anything from the succession in addition to what is allowed her in the judgment, which has become final.

*Beattie & Beattie* Attorneys for Frank Reese, Opponent and Appellant:

1. In the interpretation of wills the intention of the testator is the guiding star, and in case of doubtful expressions a meaning must be given to them that it is likely the testator meant to give, considering his habits and his education. 35 An. 718, Duranton, Liv. III, Tit. II, Chap. V, Sec. XI, 361; 35 An. 1056, Touillier V, Sec. 362; Id., Vol. VI, Sec. 310.

2. A will of movables operates as if written at the moment of the death of the testator. It operates upon all of the property then owned by him. 35 An. 718; Lovelace on Wills, Part II, Chap. 1, 19; Touillier V, Sec. 362.

3. In the interpretation of wills a court may supply words, and *a fortiori* it may punctuate in accordance with the rules of the English language. 8 An. 254.

4. Article 480, C. C., does not govern the case at bar, the articles given being in a different house from the one given.

5. If, in a conjoint legacy to two, one of the legatees is incapable of receiving, the whole goes to the other by accretion. C. C. 1707, 1708.

6. Attorneys' fees for filing application for administration, and especially if there is a will, must be paid by the applicant and not by the estate. 10 R. 541.

7. An administrator who turns over all of his duties as administrator to his attorney must pay the fees of his attorney himself. 3 An. 517.

8. An attorney will be allowed nothing from the estate when his services were not beneficial to it and when advice given by him was of such a character as to cause great trouble and costs to the estate.

9. An administrator or executor guilty of acts of spoliation toward the estate, and so remiss and unfaithful in his duty as to cause great trouble and extra costs, is not worthy of his commissions.

---

*Clay Knobloch & Son* Attorneys for Harriet Reese, Opponent and Appellant:

A concubine who receives from her paramour a donation *inter vivos* which, under Art. 1481, C. C., is reduced to one-tenth of the estate, is not estopped from claiming as a copartner and in her own right one-half of the property of the paramour, when she alleges that concubinage was a mere incident of the relations that *ab initio* were those of master and servant, and when she further alleges that her joint labor, industry and economy contributed to accumulate and save such property. 8 M. 11; 7 An. 152; 25 An. 448; 44 An. 61.

---

*John S. Billieu* Attorney for Pauline Hébert, wife of decedent and dative tutrix of the minor Germaine Morvant, Opponent and Appellee:

1. The intent of the testator must appear from the will itself and the instrument is to be construed as a whole.

2. Though written by an unlettered man, and whilst therefore not according to the rules of grammar, the intent is clear.

---

The opinion of the court was delivered by

NICHOLLS, C. J. Jumonville Morvant died in the parish of Lafourche on June 2, 1890, leaving neither ascendants nor descendants, but collateral relations. On the 6th June, 1890, Sylvere Morvant, a brother of the deceased, applied to be appointed administrator of the succession. An inventory was taken, and, after the usual

delays and notices, Sylvere Morvant qualified as administrator. On the 7th October, 1890, one Harriet Reese filed a suit against the succession represented by the administrator, claiming two one-thousand dollar bills which had been inventoried as part of the assets of the succession as her own property by title of manual gift made to her by the deceased. Answer was filed in the suit, and upon the issue therein made the case was tried and resulted in a judgment on the 7th April, 1891, decreeing that Harriet Reese having been the concubine of the deceased could recover but one-tenth part of the succession after the payment of all just and legal charges. This judgment was not appealed from and became final.

In the suit of Harriet Reese vs. The Succession of Morvant, a document which was afterward probated as a will was filed, the filing bearing date 25th February, 1891, and it remained on file in that suit until the 8th of October, when, at the instance of one Frank Reese, represented by Messrs. Beattie & Beattie, attorneys at law, it was offered for probate as the last will of Jumonville Morvant.

On the 31st October, 1891, Sylvere Morvant and his brothers and sisters filed their opposition to the probate of this document and the prayer for the executorship, claiming that it was not a will, but asking, if the court should so declare it to be, that Sylvere Morvant be appointed executor.

The District Court on the 12th December, 1892, held the document to be a will, leaving the question of the executorship to be determined subsequently. On appeal to this court this judgment was affirmed. Succession of Morvant, 45 An. 207. In the subsequent contest for the executorship, Sylvere Morvant was appointed and qualified as such on the 17th June, 1893.

The instrument probated as the will was as follows:

"September 14th 1878.

"Brother and Sister i Give my piec of Lands What i Bout from Miss C M Gillis To Harriet Reese and Frank the boy what i rase and also my buggay and all my Cow and my oxson and the Cart also dollar My Mare and oll What i got in the house i give all that To Harriet Reese and Frank Longs they live Brother and sister i give that to Harriet Reese and Frank for they Life times So no Law got anythings to do With What i give her and Frank i give it to her with all my heart She has been with me 24 years Well my Brother and Sister

i sine my manes on this piec paper for you all to see that i Right dis myself.

"J. Morvant

"J. Morvant

"J F Morvant

"Brother Joahim you will get all my money that Mr. H W tabor got for me and you will give it to harriet Rees he got 2 noat for me."

The executor filed his final account of executorship and tableau of distribution on the 8th of December, 1893. To this account Messrs. Beattie & Beattie, Frank Reese, Harriet Reese, and the tutrix of Germaine Morvant, one of the minor heirs, filed oppositions.

On the trial of the case the executor filed pleas of estoppel and *res judicata* to the opposition of Harriet Reese.

In this account or tableau the executor makes the statement that, by the last will of the deceased, Frank Reese and Harriet Reese were given the usufruct for life of—first, the real estate described under the item 1 of the inventories, valued at $700; second, the horned cattle or their value, described under Nos. 5, 6, 7, 8 and 9 of the inventories, aggregating a value of $79; third, the movables, the No. 10 (one gun and one hunting bag), valued at $30, but that the buggy referred to in the will is no longer in existence and the mare, "Dollar," died long since.

He declares that, in his opinion, the rights of Harriet Reese were fixed by the judgment rendered in her suit against the succession, and that she can not claim the rights fixed by that judgment and also the usufruct bequeathed her; that, therefore, he proposed to deliver to Frank Reese, upon his furnishing security as usufructuary and otherwise complying with the law, the aforementioned property still in existence, to be enjoyed by him in usufruct according to the terms of the will.

The account showed certain movables and a balance in cash still in the hands of the executor, which he proposed to distribute among the legal heirs of Morvant.

In the opposition filed by Messrs. Beattie & Beattie they claimed as being due them as privileged creditors of the succession the sum of five hundred and five dollars for their services as attorneys at law. They allege that knowledge of the existence of the paper afterward probated as a will was brought home to Sylvere Morvant,

20

then acting as administrator of the succession, as far back as 25th February, 1891, by the filing of the same in the suit of Harriet Reese. That in spite of this knowledge he failed and refused to open the succession and probate the instrument, but continued to intermeddle in the succession and retain its funds without any authority or legal right and without rendering any account. That on the 8th October, 1892, they were employed by Frank Reese to open the estate and to probate the will; that they filed a petition for that purpose in the name of the said Reese, who was a legatee under the will, and asking for letters of executorship; that this application was opposed by the administrator and all the heirs at law of the deceased. That the litigation ended in the probating of the paper as a will by the District Court and in the affirmance of the action of that court on appeal to the Supreme Court. That in this litigation they and opponent Reese acted for the best interest of the whole estate, legatees and creditors.

Frank Reese claimed in his opposition that by the last will of the deceased he was made his sole universal legatee. He opposed generally each and every item of te account, and certain items thereon particularly mentioned. He prayed that he be declared the sole universal legatee and placed in possession of the estate, and that he recover judgment against the accountant for thirteen thousand one hundred and seventy-five dollars.

Harriet Reese in her opposition declared that she was entitled to one-tenth of the whole succession by virtue of her judgment, in the suit already referred to, asserting that said one-tenth had been adjudged to her under a manual donation *inter vivos* made to her by Jumonville Morvant. She claimed that she was, moreover, entitled to one-half of the remainder of the succession for the reason that for forty years next preceding and up to the death of the said Morvant he and she had lived continuously and uninterruptedly as man and wife, but that their relations *ab initio* were those of employer and servant—opponent being his servant; that at the time their relations as such began, and for years thereafter, Morvant was a poor man, not owning any property whatever; that opponent attended to all his household affairs, keeping house for him, raising and selling poultry, raising cows, caring for them, selling eggs and milk, doing all his housework, as cook and washerwoman, caring for and saving up the money made by them in their joint industry, economizing in every possible way the same *as a good and dutiful wife*

would have dore, and demeaning herself toward him as faithfully as
if she had been his lawful spouse, taking care of all his cloth'ng,
mending and buying same for him; and she avers that by reason of
all that is aforesaid, and by her thrift, economy, joint labor and in-
dustry during said forty years, she enabled him to acquire, accumu-
late and have all the property that is inventoried in the matter of his
succession, and is therefore entitled to one-half of all the said prop-
erty after deducting the one-tenth thereof for the aforesa d donation
made to her *inter vivos*.  In addition to this claim she opposed the
account on grounds which it is unnecessary to particularize in view
of the conclusions we have reached in the case.

The district judge recognized Frank Reese as the owner in full
ownership of the real estate referred to in the will and ordered him
to be placed in possession thereof.   It recognized him to be entitled
to hold in usufruct certain movables mentioned, and ordered that he
be placed in possession as usufructuary on giving security as such
according to law.   It rejected the claim of Harriet Reese in so far
as she set up a claim to be entitled to one-half of the property of
the succession, in addition to the one-tenth of the estate adjudged
her under the donation of the two promissory notes.

It ordered the executor to account for $175 for the stallion Grandy,
and rejected his claim for commissions on the property declared to
have been bequeathed to Frank Reese.   It reduced the fee of L. P.
Caillouet, attorney at law, to $200, and that of Messrs. Badeaux and
A. F. Knobloch to $250; also reduced to $10 the fee of Coulon,
notary, and such changes having been made and ordered to be made,
it homologated the executor's account.

Messrs. Beattie & Beattie, Harriet Reese, Frank Reese, Sylvere
Morvant, the executor, and Mrs. Pauline Hebert, tutrix, appealed.

We think the action of the lower court in rejecting the opposition
of Messrs. Beattie & Beattie was correct.   Morvant appointed no
executor in his will, which was limited in its dispositions to a special
legacy of specific property.   The existence of the paper afterward
probated as such will was unknown to his legal heirs at the date of
his death, and his succession was regularly opened and placed under
administration with an administrator as its legal representative.
Opponents claim that their services in subsequently, at the request
of Frank Reese, propounding the will for probate and doing so suc-
cessfully against the opposition of the heirs and administrator

enured to the benefit of all parties concerned.  It is a mistake to suppose that should a succession have been either entirely or partially settled under the administration of an administrator, that all acts done under such administration would necessarily be invalidated by the production of a will in which the testator should have specially bequeathed particular property.  (Dwight vs. Simon, 4 An. 493.)  No person other than the particular legatee would have an interest in the probating of the will, and his only interest would be to receive the legacy.  If the legacy should in point of fact be received it would be a matter of indifference to him whether it should have been delivered by an executor, an administrator, or by heirs in possession.  It is not essentially necessary that an executor should be the representative of a succession in all cases where the deceased may have left a will, although, where that fact is known, such would be the character of the legal representative.  The office of executor is but ancillary to the great object of settling and distributing the estate.  Nicholson vs. Ogden, 6 An. 486.  In this particular case the probating of the will was solely and exclusively in the interest of the special legatee and to him his clients must look, as the court below declared.  Roselius vs. Delachaise, 5 An. 481; Michon vs. Gravier, 11 An. 598; Wailes vs. Succession of Brown, 27 An. 412.

The rejection by the court of the opposition of Harriet Reese, claiming one-half of the property of the succession, in addition to the rights adjudged to her under the donation of the two notes mentioned, was also correct.  She alleges that she was the servant of Morvant.  She never ceased to be such.  If anything be due to or belong to her, it is not "property" based upon the grounds set up, but "money" as "wages" for services rendered.  If the claim asserted by the opponent were maintained, it would place the concubine of a person upon the same line and footing as a wife.  Such a proposition can not for an instant stand the test of either law or morals.

The cases of Delaman vs. Roger, 7 An. 152, and Malady vs. Malady, 25 An. 450, relied on by the opponent, were decided upon their own special state of facts and not upon the theory of a quasi community of acquets and gains between a man and his mistress, on which theory the present claim must rest, if at all.  In the cases cited the rights of the women were predicated on the fact that they had actually furnished the money with which the property was purchased.

In the first case the court said: "The reasonable effect of Art. 2804 of the Civil Code is to render the participator in concubinage incapable of recovering as a universal partner one-half of the property acquired, although her labor may have contributed nothing toward its accumulation; but when her capital and labor have contributed a full share toward the result, equity entitles her to half the property acquired."

Art. 2804 of the former is Art. 2833 of the present Civil Code, and is as follows:

" Universal partnership shall only be contracted between persons who are not respectively incapacitated by law from conveying to or receiving from each other to the injury of others."

There is not a word in the record going to show that the deceased ever received a dollar from the opponent, or that a cent of her money was ever employed in the acquisition of any property, whilst it does appear that in the settlement of the estate she will, under the donation made to her, receive in money an amount equal to one-tenth of the value of the whole succession.

This opponent made special objections to the account filed by the administrator. Some of these objections were to the effect that the administrator had failed to charge himself with various amounts which should have been placed to the credit of the succession; others, that certain charges presented as claims against the succession were excessive. As a general rule, one neither an heir nor a creditor of a succession has no right to interfere in its administration, but under the exceptional facts and circumstances of this case Harriet Reese, though holder and owner of two notes against third persons, became entitled to examine and question the account of the administrator, in so far as it would tend as rendered to throw the tenth of the value of the estate illegally and improperly below the amount of the two notes donated to her. The parties whose claims were reduced upon these oppositions, and those of Frank Reese, have not appealed. The administrator is not authorized to appear before us in their behalf, and the judgment as to those parties must remain untouched. There has been a misapprehension, we think, in respect to the position and rights of Harriet Reese, and in the scope of the judgment which was rendered in the suit which she instituted to have herself recognized as owner of the two notes referred to.

Her rights as donee of those two notes were entirely separate and distinct from those as a legatee under the will. When upon her claiming ownership of the notes the defence was set up that she had been the concubine of the deceased, and therefore could not, under Art. 1481 of the Civil Code, take by donation to an amount exceeding one-tenth of the value of the whole estate, the court maintained the defence and limited her rights to one-tenth under the article cited, it, at the same time, to that extent recognized the donation in substance, though not in form. The judgment did not change the character of her title. She did not become through the judgment the holder of a general claim against the succession for one-tenth of its entire value, whatever it might be, but remained the owner of a special claim under the donation, which, *under no circumstances, was to exceed $2000*, but which was subject to be reduced below that sum, if necessary, to such an amount as would make the donation conform to the law. Her *status* as donee and legatee were not merged together under and through the judgment. The effect of this misapprehension has been, we think, to cause the opponent to make no claim as a legatee under the will, either in this court or the court below.

The next opposition in its order in the record is that of Frank Reese. In reference to this the district judge said: "The first question to be disposed of is how should the will of Jumonville Morvant be construed and interpreted. In other words, what did he dispose of—to whom and by what kind of title? The executor contends that by his will Morvant left only the usufruct to Frank Reese of the real estate which is described in the inventory, and the usufruct of the horned cattle, gun and hunting bag, which are also inventoried. He claims, on the other hand, that all of the property described in the will and left by the testator at his death was given to him in full ownership and not as usufructuary. By his will the testator constituted Harriet Reese and Frank Reese his legatees, but as the former was his concubine and could not receive anything from the estate beyond the tenth part provided for by Article 1481, the latter became his sole legatee by right of accretion under Article 1707, C. C. What then did he leave to Frank Reese? * * * I think it plain that he intended to give to his legatees in full ownership the land which he bought from Mrs. C. M. Gillis—the same which is described under No. 1 of the inventory, and that he gave to them the

remainder of the property disposed of by him. The question now to be determined is: Did he leave to them the usufruct of only such property mentioned in the will as he owned on the 14th September, 1878, the day the will was made, or was it his intention to give the usufruct of such property of the same kind as he might leave at his death? In my opinion the objects described in the will are particular legacies and Frank Reese is a particular legatee. He does not constitute him either a universal legatee nor a legatee under universal title, for he does not give to one or several persons the whole of the property which he leaves at his decease, as provided by Article 1606 of the Civil Code, nor a certain proportion of the effects of which the law permits him to dispose, as a half, a third, or all his immovables, or a l his movables, or a fixed proportion of all his immovables or of all his movables, as provided by Art'cle 1612 of the Civil Code. The testator designated particularly the property he de. sired to dispose of in full ownership, as well as that which he proposed to give the usufruct of. In my opinion it can not be successfully contended that objects of the same kind as those specially disposed of on the 14th September, 1878, were intended to be included in the legacy, and my view of the case and of the law on the subject is that only such objects as were in existence on the day the will was made were intended to be covered by the clause therein giving the righ of usufruct to his legatees.

"Marcadé says: 'Ainsi celui qui legue tous ses immeuble; mais comme biens speciaux determinés et non en masse; celui qui legue m.me en masse et dans leur ensemble toutes ses maisons—tous ses bois—tous ses immeubles de; colonies ou de tel departement ei qui exclut ainsi ses autres immeubles de la disposition ne fait que des legs particuliers. Il en sera ainsi encore de toute; dispositions d'usufruct si éxtendu que cet usufruct puisse étre.' Vol. 4, p. 101 (Art. 1010, C. N.); same volume, p. 117 (C. N. 1019); Succession of Dougart, 30 An. 272.

" It is clear to my mind that the testator intended to leave the usufruct of the buggy which he then had, and which the evidence shows was not on hand at the time he died. It is not necessary to discuss what cows he intended to dispose of in usufruct, since the executor has proposed to turn over the horned cattle left at the death of the testator. The evidence shows that at that time there were no longer any oxen, also that the mare ' Dollar ' had died,

and that the cart spoken of consisted of only an axle, a hub and some ties, of little or no value as a cart. I am of the opinion that the language of the testator in leaving the usufruct to his legatees of 'all what I got in the house' can not be interpreted to mean a disposal in usufruct of all that he might have in his house at his death, but only of such as he had at the date of his will. His will designated and meant to designate such objects legally included within the meaning of his language as he owned at the time, for he speaks of the present, and not of what he might have at his death. I am borne out in my interpretation by the rule laid down in Arts. 1720 and 1722 of the Civil Code, and by the decisions of the Supreme Court in the Succession of Valentine, 12 An. 286, and Lawson vs. Lawson, 12 An. 603. Counsel contends that all the property owned by the deceased at the date of his death was transferred to him, and not such only as he had on the 14th of September, 1878, the day the will was made, and rely upon the Succession of Burnside, 35 An. 719, and Succession of Marks, 35 An. 1055. It will be noticed that in both of those cases the legatee was an universal legatee and not a particular legatee of certain designated property, as in the instant case. * * * So far as Frank Reese is concerned, I have reached the conclusion that he is entitled in full ownership to the land described under No. 1 of the inventory, and that he is entitled to the usufruct of the cows and other horned cattle, as well as the gun and hunting bag, and the axles, ties and hub of an old ox cart, all of which are described under No. 5 to No. 10, inclusive, and No. 12 of the inventory, on his giving security as usufructuary.''

The judgment of the court as to Frank Reese conformed to the views expressed by the judge in his opinion. The conclusions reached by the District Court were correct, except that relative to the disposition made by the testator of the land mentioned in the will and described under No. 1 of the inventory. We are of the opinion that the testamentary disposition made of that land in the will was of the usufruct thereof during lifetime, and not of the full ownership of the property. Counsel of the executor in their brief say: ''The articles intended to be bequeathed are enumerated by this illiterate man in his own inartistic and clumsy manner, but in such a way that his meaning is obvious. No period can be supplied, without doing violence to the sense, after the words 'the boy what I rase,'

and yet without putting a full stop at this part of the sentence it can not be said that the will gives the land in full ownership to Frank Reese. The sentence in its natural order comes to a stop after the words ' longs they live.' A new sentence begins with the words brother and sister, which follow. Full and complete sense is made by adopting this interpretation of the will. If a period is placed after the words ' the boy what I rase ' we will have to make the following sentence begin with the words ' and also my buggy,' etc., which is not permissible according to plain rules of punctuation. We contend that the only natural construction to give to the words of the will in which they refer to legacies is to treat the land, the buggy, the cows, the oxen, the cart and the mare ' Dollar' as forming but one continuous enumeration, all qualified by the expression ' longs they live,' and by adopting this interpretation we come irresistibly to the conclusion that the land as well as the movables was intended to be given in usufruct. We are strengthened in the contention that we make by the very next sentence in the will, which by the terms used emphasizes the intention of giving the land in usufruct. It says: 'i give that to Harriet Reese and Frank for they life times, so no law got anything to do with what I give her and Frank.' The word ' that ' used in the second clause refers evidently and can not refer to anything else than the whole enumeration of objects contained in the first sentence, including, of course, the land. If it had been the desire of the testator to exclude the land from the usufruct that he was constituting, it is certain he would have used words to indicate his meaning. It would have been easy for him to say, for instance, 'I give the piece of land that I bought from Miss Gillis, to Frank and Harriet.' Had he stopped there, his meaning would have been that he gave the land in ownership to these beneficiaries of his bounty, but the fact that he goes on and says that he gives *also* the buggy, etc., to these persons for as long as they live, and that he further indicates his intention of establishing a usufruct in their favor by saying that he gave them ' that ' for their lifetime, points to the conclusion that he meant to give everything mentioned specifically in the will in usufruct and not otherwise.'' Counsel refer us to the frequent use of the words '' brother and sister '' in the will as significant; they say that by adopting the interpretation that the land and movables were to be given in usufruct only '' there was a reason why the testator desired

to address his collateral kindred.  He recognized that under the law all his property would belong to his blood relations and he did not wish to deprive them of their inheritance.  At the same time, he wished to impress upon his heirs that while he gave them everything else that was not enumerated in the will, that even those designated objects would be theirs ultimately, but he wished that Frank and Harriet Reese should not be disturbed in the use of the land and movables as long as they lived.''  We think counsel have taken a cor-rect view of the intention of the testator as expressed in his will.

Holding, as we do, that Frank Reese was a special legatee of par-ticular objects, the opposition filed by him wherein he seeks to charge the executor with an increase in the credit items of the ac-count require no attention at our hands and this is conceded by his counsel.

In deciding that only the usufruct of the land mentioned in the will was conveyed by the will, we throw the constructive possession at least, and the responsibility for that property for the time being, upon the executor, whose duty it will be to see that proper security be given by the usufructuary in the premises.  Being thus responsible for it, he is entitled to have the same included in the property upon which his commission is based.   With the exceptions mentioned, we think the judgment appealed from is correct.

For the reasons assigned, it is hereby ordered, adjudged and de-creed that the judgment appealed from be amended in so far as it ad-judged and decreed and recognized Frank Reese to be the owner in full ownership of the real estate bequeathed to him by Jumonville Morvant and described under No. 1 of the inventory in his succes-sion, and that he be ordered to be placed in possession thereof by the executor, Sylvere Morvant, and it is now ordered, adjudged and decreed that Frank Reese be and he is hereby recognized as usu-fructuary during his life under the will of Jumonville Morvant of the real estate mentioned in said will and described under No. 1 of the inventory of his succession, and that he be placed in possession thereof by the executor on his giving security according to law.

And it is further ordered, adjudged and decreed that the judgment appealed from be amended in so far as it rejects the claim of the ex-ecutor to be paid a commission of two and a half per cent. on seven hundred dollars, the inventoried and appraised value of the real es-tate recognized in the judgment to be the property of Frank Reese,

and it is now ordered, adjudged and decreed that the claim of the executor to be paid a commission of two and a half per cent. on the appraised value of the property mentioned in the will and described under the No. 1 of the inventory be recognized as just and the same is maintained. As so amended, the judgment appealed from is affirmed and the case is remanded for further proceeding according to law, costs of appeal to be paid by Messrs. Beattie & Beattie, Harriet Reese, Frank Reese and Mrs. Pauline Hebert, tutrix.