(104 So. 726)

No. 26872.

## Succession of MAGINNIS.

(May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Wills** ⚖️612(1) — **Unequivocal bequest to special legatee of contents of bank box held not modified by secondary clause immediately following; "Fidei commissum."**

Under codicil of will that, "I also give hereby to T. the contents of my bank box in W. Bank—to which he now has the key—such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit," *held* that intention of testator, as disclosed in main clause, to donate contents to special legatee, is unmistakable, which plainly expressed intention, in view of Civ. Code, arts. 1712, 1713, was not modified by secondary clause immediately following it, and as special legatee was not charged with trust of holding or delivering such effects to any particular person at any particular time, essentials of fidei commissum are wanting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fidei Commissum.]

2. **Wills** ⚖️487(1)—**Parol proof as to intention expressed by testator at time of making legacy inadmissible.**

Under Civ. Code, arts. 1575, 1576, and 1715, parol proof, through witness to codicil, as to intention expressed by testator at time of making special legacy by such codicil, was inadmissible, and could not be received as one of circumstances which may aid in discovery of testator's intention.

St. Paul, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Final account by the Interstate Trust & Banking Company, testamentary executor of the succession of William T. Maginnis, with prayer that Mrs. George Rose and others be cited to show cause why assets of estate should not be distributed as proposed in final account. From an order of distribution, Mrs. George Rose and her children appeal. Affirmed.

Denegre, Leovy & Chaffe, of New Orleans, for appellants.

Robert J. Perkins and W. Catesby Jones, both of New Orleans, for appellee Thorn.

LAND, J. On November 9, 1922, William T. Maginnis departed this life at his domicile in the city of New Orleans. Decedent died without ascendants or descendants, and disposed of his estate by nuncupative will by public act. After making a number of special legacies, including one to Alexander Schwarz, his faithful nurse, of $3,000, and another to Mrs. George Rose, the sister of decedent, of his "personal jewelry and effects," the testator bequeathed the remainder of his estate to his niece, Gwendolyn Rose, and to his nephew, Reginald Rose, the children of his sister, Mrs. George Rose, née Josephine Maginnis.

By codicil of date June 22, 1922, the testator reduced the legacy to Schwarz to $500, and made the following special legacy:

"I also give hereby to Charles B. Thorn the contents of my bank box in the Whitney Bank —to which he now has the key—such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit."

The testamentary executor, Interstate Trust & Banking Company, in filing its final account, suggested to the court below that a dispute had arisen between Thorn, the special legatee, and the residuary legatees, as to the proper construction of the provision in the codicil of decedent's will bequeathing to Charles B. Thorn "the contents of my bank box," etc., and prayed that Mrs. George Rose and the other legatees be cited to show cause why the assets of the estate should not be distributed in the following manner as proposed in the final account:

(a) Delivery to be made to Mrs. George Rose of all personal jewelry and effects of the decedent other than those contained in testator's bank box in the Whitney Bank.

(b) Delivery to be made to Charles B.

Thorn of the personal jewelry and effects of the decedent contained in his bank box in the Whitney Bank, but not the securities.

(c) Delivery to be made to Gwendolyn Rose and Reginald Rose, in equal proportions, of the amount of cash remaining after the payment of the debts and charges now remaining unpaid, and of all of the property of decedent other than his personal jewelry and effects, and other than the securities contained in testator's bank box in the Whitney Bank.

The respondent Thorn, in answer to the rule, claims the ownership, as special legatee, of all of the contents of the bank box in the Whitney Bank, including both the jewelry and the securities.

The residuary legatees contend, to the contrary, that the special legacy to Thorn is a legacy solely of the scarf pins and other jewelry belonging to the deceased at the time of his death, and found in the bank box; and, in the alternative, said legatees attack said special legacy as a fidei commissum and disposition reprobated by our law.

The trial judge decided that the special legacy to Thorn included the entire contents of the bank box—scarf pins, jewelry, and securities.

Mrs. George Rose and her children, the residuary legatees, have appealed.

[1] 1. The issue presented to us is the proper interpretation of the special legacy to Thorn made in the codicil to the will of the decedent.

The language of the testator is clear and unequivocal: "I also give hereby to Charles B. Thorn the contents of my bank box in the Whitney Bank—to which he has the key."

The intention of the testator to donate "the contents" to the special legatee is unmistakable, as is apparent from the main clause of the legacy.

The question, therefore, is, to what extent has the intention of the testator, as plainly expressed in the principal clause of the legacy, been modified or changed by the secondary clause immediately following, "such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit"?

We fail to see wherein the legacy of "the contents" of the bank box has been affected at all by the subsequent clause, as the distribution of the scarf pins and other personal jewelry of the decedent among his friends as souvenirs is left entirely to the pleasure of the legatee. No particular beneficiary is named as the recipient of any of the articles of jewelry, and no gift or legacy to any designated person has been made of any of these trinkets, other than to the special legatee, Charles B. Thorn, who has been placed by the testator in the same position as to the distribution of these mementos as the testator himself would be in, if he were alive, and should desire to distribute these tokens of his friendship and esteem. The special legatee, under the terms of the legacy, has entire control of such scarf pins and other jewelry for the purposes of distribution at will. He has not been charged with the trust of holding and delivering such effects to any particular person or persons at any particular time. The essentials of a fidei commissum are therefore wanting.

It is clear, under this state of facts, that the entire contents of the bank box are included in the terms of the special legacy, and that the residuary legatees are without interest to contest this disposition.

[2] 2. It is true that article 1715 of the Civil Code is to the effect that:

"When, from the terms made use of by the testator, his intention cannot be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention."

Article 1575 of the Civil Code provides, however, that:

"Testaments, whether nuncupative or mystic, must be drawn up in writing, either by the testator himself, or by some other person under his dictation."

Article 1576 of the Civil Code also declares that:

"The custom of making verbal testaments, that is to say, resulting from the mere deposition of witnesses, who were present when the testator made known to them his will, without having committed it or caused it to be committed to writing, is abrogated."

Construing article 1715 with articles 1575 and 1576 of the Civil Code, it is clear that parol proof of the verbal declarations of the testator, made at the time of the making of the codicil in this case, cannot be received as one of the "circumstances which may aid in the discovery of his intention." In the recent case of Succession of Rusha, No. 26278 on the docket of this court, 103 So. 515,[1] we held that:

"Testamentary dispositions can be made only in writing in the form and manner prescribed by law for wills. Hence testamentary dispositions can never be established as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. And it is but one step from the explaining of a written testamentary disposition by proof of the verbal declarations of the testator, to the establishing of a verbal testamentary disposition; the line of demarcation between the two being very fine, if, indeed, it exists at all."

We hold, therefore, that the parol proof received in this case, through a witness to the codicil, as to the intention expressed by the testator at the time of making the special legacy, was inadmissible, and should have been excluded.

"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament" (C. C. art. 1712), and "a disposition must be understood in the sense in which it can have ef-

fect, rather than that in which it can have none" (C. C. art. 1713).

To construe the special legacy in this case as a donation only of the scarf pins and jewelry of the testator to the special legatee, to be distributed by him among the friends of the decedent, would deprive the legatee of any legacy at all, in the very face of the expressed intention of the deceased to give to the legatee "the contents of his bank box."

The plain intention of the testator, as conveyed by the terms of the legacy, cannot be defeated by such misconstruction, and must prevail.

The judgment appealed from is affirmed at the cost of the appellants.

O'NIELL, C. J., absent.

ST. PAUL, J. (dissenting). A clause between dashes is a clause in parenthesis. Century Dictionary, verbo "Dash," No. 7. But a clause in parenthesis may be omitted without impairing the sense of the sentence in which it occurs. Indeed, it is almost essential to do so (at least mentally); since, as it were, "one has to dismount from an idea, and get into the saddle again, at every parenthesis." O. W. Holmes, Autocrat, VIII (quoted in Century Dictionary, verbo "Parenthesis," No. 1).

And the word "hereby" may also be omitted as mere surplusage. Likewise, the words "in the Whitney Bank" are merely descriptive of the bank box itself, and not of *the contents* intended to be bequeathed. They may, therefore, also be omitted, as foreign to the present inquiry.

And, since the sentence under consideration has *no other punctuation* than a (misplaced) *comma* after the name of the legatee and a *period* at the end of the sentence, it then reads as follows:

"*I also give to Charles B. Thorne, the contents of my bank box such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit.*"

[1] Ante, p. 14.

I admit that the use of *commas* in punctuation is so very optional with any writer that the presence or absence of a comma in a sentence is not of controlling importance when seeking the sense thereof; the reason being that the comma is used "to indicate *the smallest interruption* in continuity of thought or grammatical construction, the marking of which contributes to clearness." Century Dictionary, Verbo: *Comma*, No. 6.

But it seems to me that to read the sentence in the sense given it in the majority opinion requires a somewhat greater interruption in the continuity of thought or grammatical construction thereof than may be marked only by a *comma;* it seems to require at least a *semicolon,* which is used "to mark a division of a sentence somewhat more independent than that marked by a comma." Century Dictionary, verbo *Semicolon.* And whilst one may be permitted to *supply* a comma, or even to step-up the punctuation from a comma to a semicolon, I do not think it permissible to *split* an unpunctuated sentence by a semicolon, or by such an interruption in continuity of thought as would require *that* punctuation to mark it correctly.

The reading given to the sentence by the majority opinion, is, *in effect,* as follows:

"*I also give to Charles B. Thorne, the contents of my bank box; such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit.*"

The reading which I give to the sentence is:

"*I also give to Charles B. Thorne, the contents of my bank box such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit.*"

That is to say, I merely omit a semicolon after the word "bank-box," *just as the testator did.*

I therefore dissent.