(115 So. 618)

No. 27933.

Succession of McBURNEY.

PRESBYTERIAN HOSPITAL v. BACON.

Jan. 18, 1928. Rehearing Denied Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

1. Wills ⟝572—Legatee of contents of bank boxes held entitled to notes therein representing future rent on premises given other devisee (Civ. Code, art. 1638).

Where will provided that "everything in my bank boxes, money, stocks, bonds, are for Doctor B——, and my American Drug Store is to go to P—— Hospital," and, after testator's death, bank box was found to contain rent notes on building left to hospital, and hospital asserted that notes should go to it so as to leave property unincumbered, *held* that notes went to doctor under will, in view of Civ. Code, art. 1638, declaring that, if testator, either before or after making will, mortgages property or burdens it, heir at law or residuary legatee is not required to discharge incumbrance, unless it is so provided in will.

2. Wills ⟝572—Bequest of "everything in my bank boxes, money, stocks, bonds" gave legatee entire contents.

Provision in will that "everything in my bank boxes, money, stocks, bonds, are to be for Doctor E. F. Bacon," is construed to mean entire contents of boxes, words "money, stocks, and bonds" being illustrations of things which might be found therein, legatee's right to contents of box not being limited thereby.

3. Wills ⟝481—Statute providing that disposition, terms of which express no time, refers to time of making will, controls only when it cannot be determined from will or circumstances (Civ. Code, art. 1722).

Civ. Code, art. 1722, providing, "a disposition, the terms of which express no time, neither past nor future, refers to the time of making the will," is controlling only when it cannot be determined from language of will itself or from circumstances of case whether testator described legacy or legatee as of the date of will or of some other date, and is available only in aid of fundamental purpose of ascertaining and carrying out intention of testator, or when it cannot otherwise be determined what was intention of testator in that respect.

4. Wills ⟝439—Cardinal rule for interpretation of legacies is that intention of testator must be ascertained, and all other rules are only means to that end (Civ. Code, art. 1712).

First and cardinal rule among general rules for interpretation of legacies is that intention of testator must be ascertained (Civ. Code, art. 1712), and all other rules are only means to that end.

5. Wills ⟝481—Rule that testamentary disposition expressing no time refers to time of making will is never applicable to universal or residuary legacy (Civ. Code, arts. 1712, 1722).

Civ. Code, art. 1722, providing that testamentary disposition which expresses no time refers to time of making will, is never applicable to an universal or residuary legacy, in view of article 1712, providing that intention of testator shall govern.

6. Wills ⟝481—That testament is to go into effect at death of testator has nothing to do with time testator refers to in describing extent of legacy.

The fact that testament is to go into effect only at time of death of testator has nothing to do with question as to what time testator refers to in describing extent of particular legacy.

7. Wills ⟝481—Provision in will bequeathing everything in bank boxes held to mean everything in bank box at death of testatrix, in view of statute (Civ. Code, art. 1713).

Where will provided that "everything in my bank boxes, money, stocks, bonds, are to be for Doctor B.," *held* that, in view of Civ. Code, art. 1713, providing that disposition must be understood in sense in which it can have effect, rather than in which it can have none, testatrix meant to bequeath everything that would be in her bank boxes at time of her death.

8. Wills ⟝572—Provision in will, leaving "everything in my bank boxes to legatee," held to pass right to collect rent notes which were in box.

Where will provided that everything in the testator's bank box should go to a named legatee, and bank box contained rent notes, *held*, that provision carried with it right of legatee to collect rent notes.

9. Wills ⟝569—Testamentary disposition of nonnegotiable note is disposition, not merely of document, but of right to proceeds.

Testamentary disposition of nonnegotiable note is, like testamentary disposition of negotiable note, a disposition, not merely of the

document itself, but of the right to collect and keep proceeds of instrument.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Succession of Mrs. Alexina Sinclair McBurney, in which the Presbyterian Hospital filed a rule against Edward F. Bacon to turn over certain property. After hearing, the rule was discharged, and the plaintiff in rule appeals. Affirmed.

See, also, 162 La. 758, 111 So. 86.

E. R. Mabry, Henry & Cooper, and A. M. Suthon, all of New Orleans, for appellant.

Monroe & Lemann, Wm. McL. Fayssoux, and Nicholas Callan, all of New Orleans, for appellee.

O'NIELL, C. J. In the will of Mrs. Alexina Sinclair McBurney are the following, among other special, legacies, viz.:

"Everything in my bank boxes, money, stocks, bonds, are to be for Dr. E. F. Bacon.

"My American Drug Store on Canal street, New Orleans, La. (1024, 1026), is to go to the Free Clinic of the Presbyterian Hospital, of New Orleans, La., to be called the Alexina Sinclair fund." .

The property described as the American Drug Store, on Canal street, was not the drug store business, for that did not belong to the testatrix, but the building, which, as we understand, was rented to the proprietor of the drug store. The building is appraised at $350,000. The will was dated the 2d of December, 1921. On the 26th of March, 1923, Mrs. McBurney leased the property No. 1024 Canal street, to a corporation styled American Drug Store, Inc., for 48 months, commencing on the 1st of October, 1924, at $833.33 per month, and received from the lessee 48 nonnegotiable rent notes for $833.33 each.

Mrs. McBurney died on the 21st of October, 1924. The rent notes and a copy of the lease were found in one of her bank boxes.

The question is: Who owns the rent notes and the proceeds of those which have been collected by the executors? Dr. Bacon claims them as legatee of everything in the bank boxes. The Presbyterian Hospital claims them by right of accession, as devisee of the leased premises. The civil district court decided that the rent notes and the proceeds of those which had been collected by the executors belonged to Dr. Bacon. The Presbyterian Hospital has appealed from the decision.

The case is similar in principle to the Succession of Gamble, 23 La. Ann. 9, where the testator bequeathed to his wife all of his personal property, and to his sister the remainder of his property, not otherwise disposed of; and, as a part of the property of the succession, there were six rent notes for $350 each. The widow claimed the notes as legatee of all of the personal property; and the testator's sister claimed them as devisee of the leased premises. It was decided that the notes, being personal property, belonged to the widow. The court said:

"The rent notes, it is argued, being for the revenue derived from the rent of the real estate, partake of the realty, and should go with the real estate to the legatee receiving it or its proceeds. We cannot adopt this view of the character of the notes. Article 474 (466) of the Civil Code describes as movables—'obligations and actions, the object of which is to recover money due or movables, although these obligations are accompanied with a mortgage.'

"Article 475 (467):

"'All things, corporeal or incorporeal, which have not the character of immovables by their nature, or by the disposition of the law, according to the rules laid down in this title, are considered as movables.'

"Promissory notes have not the character of immovables by their nature or by disposition of law, and they must be taken as personal property."

Another decision that is appropriate to the present case was rendered in the Succession of Maginnis, 158 La. 815, 104 So. 726, where, in a codicil to his will, the testator said:

"I also give hereby to Charles B. Thorn the contents of my bank box in the Whitney Bank—to which he now has the key—such as scarf pins and other personal effects to be by him distributed among my friends as he sees fit."

The bank box was found to contain certain securities besides the scarf pins and other jewelry. A contest arose between Thorn and the residuary legatees as to whether he or they should take the securities. The residuary legatees contended that the bequest was restricted by the description, "such as scarf pins and other personal effects," but the court held that the comprehensive description, the contents of the bank box, was not restricted by the description, "such as scarf pins and other personal effects," and that Thorn was therefore entitled to everything found in the bank box—the securities as well as the scarf pins and other jewelry.

The appellant's counsel urge four separate and distinct arguments in support of their claim and against that of Dr. Bacon, viz.:

(1) That it is not likely that Mrs. McBurney intended to burden the Presbyterian Hospital with the expense of taxes and insurance and the upkeep of the property without giving the hospital the revenues for a period of four years—especially as the bequest to the hospital was made without any limitation or reserve whatever—and more especially because the purpose of the legacy was to establish a memorial to be named for the testatrix;

(2) That the descriptive words, "money, stocks, bonds," should be construed as controlling the comprehensive expression, "Everything in my bank boxes," and so as to convey only the money, stocks, and bonds in the bank boxes, and not the rent notes;

(3) That the testatrix did not express the time at which the condition of a thing's being in the bank box should determine that it was bequeathed to Dr. Bacon, and therefore only those things which were in the bank boxes at the time when the will was made were bequeathed to Dr. Bacon; and

(4) That the rent notes, being nonnegotiable, were not promissory notes at all, but were mere evidences of an obligation, and were therefore not subject to testamentary disposition.

[1] As to the appellant's first proposition, it is very probable that, when Mrs. McBurney put the rent notes into her bank box, after declaring in her will that everything in her bank boxes should "be for Dr. Bacon," she did not expect to die before collecting any of the rent notes, and therefore did not anticipate that the leased premises might go to the Presbyterian Hospital burdened with a lease for four years. It is probable that Mrs. McBurney expected that she herself would collect some, if not all, of the rent notes during the term of the lease. She died ten days before the first note matured. If she had lived four years longer, without renewing the lease, or otherwise incumbering or disposing of the leased premises, the property would have gone to the Presbyterian Hospital unincumbered. But that was all a matter of fate. Whatever may have been Mrs. McBurney's intention or expectation as to how much of the term of the lease might remain as an incumbrance on the leased premises at the time of her death, there is no uncertainty as to what disposition she intended to make of such rent notes as might remain unpaid at the time of her death, when she placed them in her bank box and left them there, knowing that, by the terms of her will, everything in the bank box was "to be for Dr. Bacon." Mrs. McBurney had the right to make any disposition that she saw fit to make of the future revenues of the property after making her will. In that respect, article 1638 of the Civil Code declares that, if the testator, either before or after making his will, mortgages property that is bequeathed to a particular legatee, or burdens it with an usufruct, the property goes to the legatee subject to the incumbrance—and the heir at law or the residuary legatee is not required to dis-

charge the debt or to rid the property of the incumbrance, unless it is so provided in the will.

[2] Appellant's second contention is that the intention expressed in Mrs. McBurney's will was to bequeath to Dr. Bacon only the money, stocks, and bonds in her bank boxes. That construction of the language would eliminate the first—and in our mind the most important—word in the bequest, the word "Everything." On the other hand, if we construe the words, "money, stocks, bonds," as mere illustrations of the things which might be found in the bank boxes, we give effect to every word in that clause of the will. We cannot imagine why the testatrix used the expression "Everything in my bank boxes," unless she intended, literally, that everything in the bank boxes should go to Dr. Bacon, and added the words, "money, stocks, bonds." merely as illustrations of the things which might be found in the bank boxes. There is no reason to doubt that, if Mrs. McBurney had intended to give to Dr. Bacon only the money, stocks, and bonds in her bank boxes, she would have said so by omitting the expression "Everything in my bank boxes."

In support of this second proposition, appellant's counsel cite the case of Lartigue v. Duhamel's Executor, 4 Mart. (N. S.) 664, and the Succession of Allen, 48 La. Ann. 1036, 20 So. 193, 55 Am. St. Rep. 295.

In Lartigue v. Duhamel's Executor, the bequest in contest, made to the wife of the testator, was in the French language, viz.: "La somme de $1,000, tout ce qui composera mon mobilier, bijoux et argenterie"—meaning, literally, the sum of $1,000, all that is composed of my movable effects, jewels and plate. The wife claimed all of the testator's movable estate, including all of his money. The court construed the word "mobilier" to mean household furniture. The main contention of the widow was that she was entitled to all

of the testator's money, under the description "mon mobilier." The court held that that construction of the bequest was unreasonable, because the testator began by bequeathing to his wife the exact sum of $1,000 in money. Justice Martin, for the court, said that there was perhaps no word in the English language expressing precisely the meaning of the French word "mobilier." "But," said the learned justice, "a testator's meaning must be taken from all that he has written; not from any single and detached word." And so in this case we have to eliminate the expression "Everything in my bank boxes," unless we regard the words, "money, stocks, bonds," merely as illustrations of the things that were likely to be found in the bank boxes.

In the Succession of Allen, supra, it was said, in the syllabus, by the court:

"The intent of the testator is to be determined from the whole will; * * * every word shall have effect if it can be done without defeating the general purpose of the will, which is to be carried into effect in every reasonable method."

In that case, the legacy given to the testator's wife was "all my corporeal movables such as furniture, bedding, linen, silver plate, chinaware," etc. He also bequeathed to his wife all of his cattle, horses, and carriages; also the right to occupy the homestead on his Rienzi plantation, and to have all of the revenues over taxes and other expenses, until the plantation should be sold by the executors; also $4,000 of New Orleans city bonds; also 2,350 pounds sterling in the hands of a certain firm; also half of the Rienzi plantation and of the mules and implements thereon, or half of the proceeds of the sale of the plantation by the executors. The testator bequeathed other special legacies to his relations, but failed to dispose of the residuum of his estate. His wife claimed that she was the residuary legatee of all of the "corporeal movables"; but, for reasons which are not

at all applicable to the present case, the court restricted the legacy of the "corporeal movables" to those which were specifically described. One of the reasons for so restricting the legacy of the "corporeal movables" was that, after bequeathing to his wife half of the Rienzi plantation and its equipment, the testator said that the other property he would dispose of further on. In deciding the case, the court said:

"The first question presented is, Is Mrs. Allen appointed residuary legatee under the will? * * *

"In the will he gives to his wife all his corporeal movables, and follows this general disposition by a specific enumeration of the immovables [meaning movables], such as furniture, bedding, linen, silver plate. chinaware, etc. All of his stock of cattle, horses and carriages. It will be noticed that after the designation of furniture, etc., the sentence stops, and then in another sentence he disposes of a different species of corporeal movables. There is no ambiguity in this part of the will. No [other] construction can be put upon the language than that the testator intended to limit the corporeal movables to those designated. The words reviewing the general description of the property seem to have been used advisedly by the testator. That he did not intend that his entire personal estate should pass by the general description of corporeal movables, is evident from his limiting its application in the words descriptive of particular species of property, and the further fact that large portions of his personal estate are devised to particular legatees. And again to the wife he gives other corporeal movables, such as one-half of all tools, mules, etc. He speaks of the legacy to his wife of the one-half of the Rienzi plantation a second time, and uses the expression that she should have one-half of everything belonging to Rienzi, except a claim of one hundred thousand dollars due, as alleged by the federal government, and the other property he says he will dispose of further on. He had disposed of the Rienzi plantation—all the immovable property he possessed. His other property then was movable, a part of which he had given to his wife, and the other property he proposed to dispose of thereafter. The other property could only have been that which he had not disposed of. It may have been his intention, as is usual in wills, to make his wife the residuary legatee at the closing of his will. But unfortunately for her he failed to do so, and as to this part of his estate he died intestate."

It is plain that the reasons for which the court held, in the Succession of Allen, that the bequest of all of the testator's corporeal movables was restricted by the description, such as furniture, bedding, linen, silver plate, chinaware, etc., and that Mrs. Allen was not the residuary legatee of all of the testator's corporeal movable estate, are not appropriate to the will of Mrs. McBurney.

[3, 4] Appellant's third and alternative contention is that Mrs. McBurney bequeathed to Dr. Bacon only the things that were in her bank boxes at the time when she made her will; at which time the rent notes now in contest were not in existence. The argument is founded upon article 1722 of the Civil Code, which declares:

"A disposition, the terms of which express no time, neither past nor future, refers to the time of making the will."

That rule is controlling only when it cannot be determined from the language of the will itself, or from the circumstances of the case, whether the testator described the legacy (or the legatee) as of the date of the will or of some other date. The rule is available only in aid of the fundamental purpose of ascertaining and carrying out the intention of the testator, or when it cannot otherwise be determined what was the intention of the testator in that respect. The first and cardinal rule among the "General Rules for the Interpretation of Legacies," in section 7, chapter 6, title 2, book 3, of the Civil Code, is that the intention of the testator must be ascertained. Rev. Civ. Code, art. 1712. All other rules are only means to that end. It was virtually so said in the Succession of Burnside, 35 La. Ann. 719, when the court, referring to articles 1720 to 1722 of the Civil Code, said:

"Whatever may be the effect of these articles they cannot be considered as impinging the fundamental rule, formulated by the Code under the same division of general rules for the interpretation of legacies, which enacts that the intention of the testator must principally be

endeavored to be ascertained. Rev. Civ. Code, art. 1712 (1705). They must be read along with the recognition of that controlling principle, and be construed in subordination to it."

[5] It is for that reason that the rule stated in article 1722—that a testamentary disposition which expresses no time refers to the time of making the will—is never applicable to an universal or a residuary legacy. Shane v. Withers' Legatees, 8 La. 490, 497; Succession of Burnside, 35 La. Ann. 708; Succession of Marks, 35 La. Ann. 1054; Succession of Blakemore, 43 La. Ann. 845, 9 So. 496; Thomas v. Blair, 111 La. 678, 684, 35 So. 811.

[6, 7] It will not do to say that, because the testatrix intended that her will should go into effect only at her death, therefore she referred to the time of her death in describing the extent of each particular legacy; for— that being true of every testament—the effect of the argument would be to abolish article 1722 of the Civil Code—or to make it à propos de rien. The fact that a testament is to go into effect only at the time of the death of the testator has nothing to do with the question as to what time the testator refers to in describing the extent of a particular legacy. In this case, for example, the testatrix bequeathed to Dr. Bacon everything in her bank boxes, and the question is whether she meant everything *then* in her bank boxes, at the time when she made her will, or everything that would be in her bank boxes at the moment of her death, at the time when the will would become irrevocable. There is one consideration which convinces us that the testatrix intended to bequeath to Dr. Bacon everything in her bank boxes at the time of her death; that is, that the testatrix knew very well that it would be impossible for the executors or any one else to know, after her death, what was in her bank boxes at the time when she made her will. We assume that she alone knew what was in her bank boxes during her lifetime. Therefore, if she had intended to bequeath to Dr. Bacon the things that were in her bank boxes at the time when she made her will, she would have had to describe them specifically; for the description. "Everything in my bank boxes," meant nothing to any one except herself, if the description referred to the time of making the will. All of which reminds us of the rule of interpretation given in article 1713 of the Civil Code viz.:

"A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none."

It is not reasonable to suppose that the testatrix intended, while making her will, to leave intact, thenceforth, everything that was then in her bank boxes; nor can it be contended reasonably that the legatee of everything in the bank boxes could successfully lay claim to something that was not in one of the bank boxes at the time of the death of the testatrix by proving that it was in one of her bank boxes when she made her will. In that respect the case is somewhat similar to the Succession of Sauvage, 140 La. 619, 73 So. 702, L. R. A. 1917D, 426, where the testator bequeathed to his nephew—quite a strange coincidence—"the American Drug Store," meaning the established business— and the court held that the stock of merchandise, etc., as it existed at the time of the death of the testator, and not as it was at the time of making the will, was bequeathed to the nephew. The court said:

"The general rule is that a testament speaks as of the date of the death of the testator. There is nothing in the testament before the court that indicates an intention to bequeath the drug store as it existed at the date of the will. "Such a bequest would have been absurd, as the drug store was a going business, and its assets were changing from day to day."

Counsel for appellant cite and rely upon the decision in the Succession of Morvant, 46 La. Ann. 301, 14 So. 922, with regard to a special legacy of the usufruct of all that the

testator had in his house. The testator's native language being French, and his education in English having been neglected, he described the legacy of the usufruct or life estate as of "oll what I got in the house"—meaning, of course, "all that I have in my house." The ruling was that, as the testator had described the legacy in the present tense, his intention was to describe it as it was at the time when he made his will, and not as it would be at the time of his death. The decision might be deemed appropriate to the present case if Mrs. McBurney had described the legacy which she gave to Dr. Bacon as "Everything that I have in my bank boxes," or "Everything now in my bank boxes"; but the fact is that she did not, in terms, use the present tense in describing the legacy. Our conclusion is that she meant to bequeath to Dr. Bacon everything that would be in her bank boxes at the time of her death.

[8, 9] Appellant's fourth proposition is that the rent notes, being nonnegotiable instruments, were not promissory notes at all, but were only the evidences of an obligation, and were therefore not subject to testamentary disposition. In that connection it is pointed out that the rent notes which were in contest in the Succession of Gamble, 23 La. Ann. 9, were referred to in the opinion of the court as negotiable instruments. That is true, but it was not the controlling reason for—if in fact it had anything to do with—the decision. The articles of the Civil Code which were cited by the court (articles 474 and 475) characterize as "movables" obligations represented by nonnegotiable instruments as well as those represented by negotiable instruments. A testamentary disposition of a nonnegotiable promissory note is—like a testamentary disposition of a negotiable instrument—a disposition, not merely of the document or instrument itself, but of the right to collect and keep the proceeds of the instrument. If Mrs. McBurney had described

the rent notes specifically in the legacy to Dr. Bacon, there would be no doubt of her intention to bequeath to him the right to collect the rent represented by the notes. The bequest is just as effective under the description, "Everything in my bank boxes."

Our conclusion is that the judgment appealed from is correct.

The judgment is affirmed.