199 So. 647

**HESSMER et al. v. EDENBORN.**

No. 35734.

Dec. 2, 1940.

Rehearing Denied Jan. 6, 1941.

Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, and Schwarz, Guste, Barnett

& Redmann, of New Orleans (Jerry A. Mathews and Prentice E. Edrington, both of Washington, D. C., of counsel), for plaintiffs, intervenors and proponents-appellants.

Wise, Randolph, Rendall & Freyer, of Shreveport, and Milling, Godchaux, Saal & Milling, of New Orleans, for defendant and appellee.

ODOM, Justice.

William Edenborn resided in Louisiana from 1906 until the date of his death on May 14, 1926. He left an estate valued at more than $12,000,000. He had various business connections in St. Louis, Missouri, and on June 30, 1908, while in that city, he executed an instrument now sought to be probated as his last will.

The instrument was prepared for him by the attorney for the St. Louis Union Trust Company, and was left for safe-keeping with the trust company, which was named as one of the executors. The trust company issued to him its "safe-keeping receipt" No. 1095, which bore the date of the last will, June 30, 1908.

Mr. Edenborn left no forced heirs. After his death, his widow, Mrs. Sarah Drain Edenborn, made application to the district court at Shreveport, Louisiana, where she and her husband resided at the time of his death, to be sent into possession of his entire estate, alleging that he had died intestate. An ex parte judgment was rendered by the court, recognizing her as the widow in community of the deceased and, as such, entitled to all his property, which was alleged to belong to the community. Revised Civil Code, Article 915.

The plaintiffs in the present suit, which was filed long after the widow had been sent into possession, were named as legatees in the instrument dated June 30, 1908, which they allege was the last will of Mr. Edenborn. They ruled Mrs. Edenborn, the widow, to show cause why she should not produce the instrument in court and have it probated as the last will of the deceased William Edenborn. In answer to the rule, Mrs. Edenborn produced in court the instrument, but refused to offer it for probate and registry on the ground that it was not a valid last will. She alleged in the alternative that, if it were a last will, it had been revoked by the testator on February 1, 1919.

The issue presented at the trial was whether, conceding that the instrument was the last will and testament of the deceased, it had been revoked by the testator. The trial judge held that it had been revoked. Plaintiffs, proponents of the will, appealed.

To sustain her plea that the instrument dated June 30, 1908, if as alleged it was the last will and testament of her deceased husband, had been revoked by the testator, Mrs. Edenborn introduced and filed in evidence the "safe-keeping receipt" issued and delivered to Mr. Edenborn by the St. Louis Union Trust Company at the time the will was deposited with it for safe-keeping. On the face of this receipt there appeared the following writing in pen and ink, which formed no part of the receipt as originally issued:

"New Orleans Feb'y 1st 1919

"The Will and Testament above referred to I hereby declare void

"Wm Edenborn"

It is admitted by counsel for plaintiffs that this inscription was entirely written by the hand of Mr. Edenborn. The safe-keeping receipt is on a printed form with blank spaces left for writing in a description of the articles left for safe-keeping. We here copy the receipt found among Mr. Edenborn's papers after his death, including his purported olographic revocation of the will written on the face of it:

*Safe-Keeping Receipt*

St. Louis Union Trust Company

Trust Department

No. *1095* St. Louis, *Jun 30, 1908*

This Certifies, That *Wm Edenborn* has deposited with the St. Louis Union Trust Company, for Safe-Keeping, as follows, viz.: *Last will & testament*

To be delivered to the depositor on the return of this Certificate.

> *"New Orleans Feb'y 1st 1919*
> *"The Will and Testament above referred*
> *to I hereby declare void*
> *"Wm. Edenborn"*

Non-Negotiable St. Louis Union Trust
Non-Transferable Company
By (*signature not legible*)

The writing italicized and enclosed in quotation marks is that which Mr. Edenborn wrote on the face of the receipt more than 10 years after his will was left with the trust company for safe-keeping. The name "Wm Edenborn" and the words "Last will & testament" were written in with pen and ink by the officer of the trust company who received the document for safe-keeping. It will be noted that the words "Last

will & testament" written into the receipt appear above the writing of Mr. Edenborn.

It is admitted that Mr. Edenborn intended to revoke the last will dated June 30, 1908, which he had left for safe-keeping with the St. Louis Union Trust Company. Counsel for plaintiffs say in their reply brief filed May 9, 1940:

"There can be no doubt that, in using the phrase 'above referred to,' the testator directs us to the *written* matter above to ascertain what will he was declaring void and, following his direction, we immediately learn, without going any further, that the will which he intends to declare void is the one which (1) on June 30, 1908, (2) the testator himself (3) deposited for safe-keeping (4) with St. Louis Union Trust Company."

And on page 18 of the same brief, counsel say:

"It clearly appears from the olograph and the statement of the receipt to which it refers that the intent of the whole instrument was to revoke the will which (1) the testator had deposited (2) for safe-keeping (3) on June 30, 1908, (4) with the St. Louis Union Trust Company."

But counsel say that, in order to make certain his intention to revoke the will dated June 30, 1908, Mr. Edenborn, by inserting in his olograph the words "above referred to", incorporated by reference into his olograph the safe-keeping receipt which was not written by him, and that in consequence the olograph was not entirely written, dated, and signed by him and is

therefore invalid because the "form" prescribed by the Code was not followed.

Article 1692 of the Revised Civil Code reads as follows: ,

"1692 (1685). *Form of Act Revoking.* The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities."

To revoke his will, Mr. Edenborn intended to use the form prescribed by Article 1588 of the Code. That article of the Code says that an olographic testament is that which is written by the testator himself, and

"In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State."

Counsel rest their case upon the propositions that "An olographic revocation, like an olographic testament, must, under the pain of nullity, be entirely written, dated, and signed by the testator"; that, "When the olograph refers to a writing not in the hand of the testator, and such writing completes the testator's thought or has a material effect on the meaning of the olograph, the attempted will or revocation is invalid, since the testator has deliberately incorporated into it writing not in his own hand", and that "An olograph which is meaningless unless there is read into it another writing not in the same hand, cannot be either a will or a revocation".

In sum, what counsel contend is that, while there can be no doubt that Mr. Ed-

enborn intended to revoke that certain will dated June 30, 1908, which he left with the trust company for safe-keeping, yet his attempted revocation fell short of its purpose because he incorporated into his olograph a writing not in his own hand and thereby destroyed its form, and that, in order to ascertain his intent or the substance of his wish, we must look to the trust receipt to which he referred.

According to the settled jurisprudence of this state, an olographic revocation of a last will must, like an olographic will, be entirely written, dated, and signed by the hand of the testator. Otherwise it is invalid. This rule is too well settled to need citation of cases to support it.

Unquestionably the substance of a testator's wish must be expressed in words written by him if the will is olographic in form. The same is true of an olographic revocation. Where a written instrument purporting to be a last will expresses the intent and substance of the testator's wish but is vague, indefinite, obscure, or ambiguous in the description of a legatee or in the description of the thing bequeathed or of any object referred to in the will, extrinsic testimony is admissible to make clear that which is uncertain. Revised Civil Code, Articles 1714, 1715; Succession of Pizzati, 141 La. 645, 75 So. 498; Sisters of Charity v. Emery, 144 La. 614, 81 So. 99; Succession of Tilton, 133 La. 435, 63 So. 99.

In these cases and many others like them it was conceded or assumed that the writing itself expressed the substance of the testator's wish or his intent. In Succession

of Tilton, supra, the testatrix made a bequest to "Home for Insane". But the will itself did not specifically state what "Home for Insane" was to be the object of her bounty. The court held that parol testimony was admissible to show what institution of the kind she probably meant. That case illustrates perfectly the general rule.

No extrinsic evidence is needed in this case to make certain the particular will which Mr. Edenborn intended to revoke. His writing points unmistakably to the will dated June 30, 1908, which he deposited with the trust company for safekeeping. Counsel for plaintiffs admit that.

The errors into which we think counsel for plaintiffs have fallen arise, first, out of their mistake as to what the substance of Mr. Edenborn's wish was as disclosed by the writing, and, second, out of their theory that a reference in an olographic will or in the revocation of one by the testator to another writing for the purpose of making certain the object referred to, has the effect of incorporating such writing into the will or the revocation.

A reading of Mr. Edenborn's olograph discloses at once and clearly, we think, that what he wished to do was to revoke a certain will which he had made. By using the language he did, he posed no riddle as to what his wish was. He wanted to revoke a will. He said so in plain language. That was the substance of his wish, his intent. If the words "above referred to", which he wrote into his olograph, are left out, the act of revocation would say, "The Will and Testament I hereby declare void", or, to transpose the words, "I hereby declare void the Will and Testament".

Clearly the substance of his wish, his will, and desire was couched in those words. We need not look to the recitals of the receipt to which he referred to learn that his intention was to revoke his last will. His sole purpose in using the words "above referred to" was to make it certain that he intended to revoke the will dated June 30, 1908, which he had left with the trust company. Counsel say in their brief that, by using those words, he directed attention to that particular will.

In Succession of Maginnis, 158 La. 815, 104 So. 726, the following bequest was held to be valid:

"I also give hereby to Charles B. Thorn the contents of my bank box in the Whitney Bank—to which he now has the key."

The court said:

"The intention of the testator to donate 'the contents' to the special legatee is unmistakable, as is apparent from the main clause of the legacy."

In other words, the substance of the testator's wish, his intent, his will was that Charles B. Thorn have certain property— "the contents of my bank box". These words had no relation to his main thought, which was that Mr. Thorn have a portion of his property.

In Succession of McBurney, 162 La. 758, 111 So. 86, 87, the following bequest was held valid:

"Everything in my bank boxes, money, stocks, bonds, are to be for Dr. E. F. Ba-

con. The bank boxes are in the Hibernia and Whitney safety deposit department."

Counsel for plaintiff think, as we understand them, that, in order to ascertain what the substance of Mr. Edenborn's wish or intent was, we must read into the olograph the recitals in the trust receipt to which he evidently referred, and must consider its contents. In other words, we must look to a separate writing in order to find the substance of his wish.

We cannot concur in this view. The substance of his wish or his intent clearly appears without reference to the separate writing. The purpose of his reference to the contents of the trust receipt was to point with certainty to the will he intended to revoke.

It is true, as counsel argue, that, where a testator refers to another writing for the purpose of manifesting the substance of his wish or desire, and where that wish cannot be ascertained without referring to such writing, then the testament or the revocation, as the case may be, is invalid.

In Succession of Ledet, 170 La. 449, 128 So. 273, 274, we said:

"And it may be conceded at once that a will cannot be made by mere reference to another document not itself a will, or to a former will that is invalid because of want of proper form. All the French authorities agree on that."

But no such case is presented here. Mr. Edenborn made reference to the contents of the trust receipt not for the purpose of manifesting the substance of his wish, but, as we have said, for the sole purpose

of describing or identifying the will which he intended to revoke.

Counsel's major point is that, by referring to the document, the trust receipt, in order to make certain what will he intended to revoke, Mr. Edenborn rendered invalid his attempted olographic revocation.

█ We do not think he did. If in this case we had to look to the trust receipt to ascertain what the substance of Mr. Edenborn's wish was, his olograph would have to be decreed invalid. But we do not have to look to that document to find the substance of his wish. That is found in his writing, aside from the words "above referred to".

█ It is permissible for a testator to make reference in his will to another writing for the purpose of rendering certain the object to which the will refers. By doing so he does not incorporate the other writing into his will. The same is true of a revocation.

The identical point was passed upon by this court in the case of Hall et al. v. Hill, McLean & Co., 6 La.Ann. 745. In that case the plaintiffs claimed title to certain slaves and based their claim primarily on the following bequest made in the will of an ancestor:

"I give, devise and bequeath unto my son, Wm. T. Hall, in trust for Elizabeth Hall, the wife of Dixon Hall, Jr. and their children now born, and those that may hereafter be born during their lives, all the negroes embraced by name in a bill of sale made by Dixon Hall, Jr., to me, some time

in the month of March, 1839, and the said property, as described in the bill of sale from Dixon Hall, Jr., to me, is to be the property of the wife and children of the said Dixon Hall, Jr. to their sole and separate use."

Counsel for defendant in that case argued that plaintiffs had no title for the following reason, among others:

"The will itself can confer no title. In order to make it effective, resort must be had to the 'bill of sale' referred to by the testator. This would, in effect, make the bill of sale a part of the will, which is not allowed by law."

In disposing of this contention, this court said:

"It has been urged, in behalf of the defendants, that the slaves bequeathed, should have been named in the will; that the reference to the bill of sale is vague and indefinite; and that the bequest is void for want of certainty; that if it is not, the sale referred to should have been annexed to the will, and probated as part of it.

"We are of opinion that a testator may so construct his disposition, as to render it necessary to have recourse to some document, in order to elucidate or explain his intention, and that the document referred to, may be consulted for that purpose, and need not be probated as forming a part of the will."

Counsel for plaintiff say that what the court said with reference to this point was obiter dictum. They are mistaken. It is true that the court held that the plaintiffs had no title to the slaves because it found that the instrument referred to in the will was a "simple receipt, and not properly speaking, a deed of sale". If the court had thought that the bequest of the slaves was invalid, a holding to that effect would have ended the case and it would not have been necessary to go further and decide the second point.

The clause in the will bequeathing the slaves in that case was attacked on the ground that, in order to make it effective, "resort must be had to the 'bill of sale' referred to by the testator", which "would, in effect, make the bill of sale a part of the will". But the court held that reference to the bill of sale was permissible "in order to elucidate or explain his intention, and that the document referred to, may be consulted for that purpose".

This ruling is in accord with the French authorities. Huc, Volume VI, No. 266, page 337, says:

"That because it is in the document itself drawn by the testator that the judge must discover the intent of the latter, that does not prevent a testament from being declared valid when it refers, for example, for the description of the objects bequeathed, to another act not clothed with the testamentary forms, where it is found by the judge of the lower court, whose discretion is sovereign in this regard, that the intention of the testator to divide his property in the manner by him indicated is clearly expressed in the testament which incorporates thus the substance of the disposition."

"The prevailing opinion," says another French authority, "is that, in order to be valid as a testament, an act must be complete in itself and unite all the essential conditions of testamentary dispositions without having to refer to another act which is not a testament. * * * However it is admitted that, when the testament contains the substance of the disposition, the testator can refer, in order to determine and make more certain the person or the legatee or the thing bequeathed, to an act not clothed in testamentary forms." Carpentier et du Saint, Repertoire du Droit Francais XXXV, Verbo "Testament", Nos. 62, 64.

According to the ruling in the Hall case, supra, and the rules laid down by French writers, the writing of Mr. Edenborn quoted hereinabove was a valid revocation of the will.

Counsel for plaintiffs filed two briefs in which they cite in support of their contentions many cases decided by this court, and leading French authorities. They are able counsel, for whose opinions we have great respect. But we do not think the cases and authorities cited are in point. They seem to rely strongly on Succession of Walsh, 166 La. 695, 117 So. 777, and Succession of Ledet, 170 La. 449, 128 So. 273.

In Succession of Walsh, supra [166 La. 695, 117 So. 778], the will was olographic in form and was attacked by the husband of the testatrix on the ground that one O'-Brien "held the hand of his said wife during the writing of the will", and that therefore it was not wholly written by her hand. The court upheld the will because it found as a fact that the will was entirely written by the testatrix without assistance. In the course of its opinion, the court said that it subscribed to the view expressed by French authorities that an olographic will, to be valid, must be entirely written, dated, and signed by the hand of the testator.

The case is authority on that point. But it does not support counsel's theory that, when a testator refers in his olographic will to another writing, not for the purpose of manifesting the substance of his wish, but for the purpose of making certain the identity of some person or object referred to in the will, he thereby incorporates the other writing into his will and by so doing destroys its form. The French authorities cited all say in substance that it is the essence of an olographic will that it be written and signed by the testator. No one doubts that.

The Ledet case holds that a will cannot be made by mere reference to another document not itself a will.

The judgment is affirmed.

ROGERS, J., absent.