ELLIS, Judge.
Mary Lucinda Brewster died on March 2, 1958, leaving an olographic will dated July 27, 1942, which was duly probated on March 13, 1958. Following the signature on the will was the following postscript:
“I appoint my attorney Jerome Meunier as my executor.”
The court, ex proprio motu, refused to admit the latter sentence to probate, and it is not contended by counsel herein that it is of any testamentary effect.
On July 27, 1945, Miss Brewster wrote the following letter to Mr. Meunier.
“ New Orleans, La. July 27, 1945
“Mr. Jerome Meunier American Bank Building New Orleans, La.
“Dear Jerrey
“This is to notify you that I have made you the executor of my estate in my will, which will be found in my bank box.
“It is my desire to be burried privately only to my close reletives and some dear friends. My death notice must not be publised before or after my death in the papers. I will be burried from a High Mass at St. Anthony Curch, as I am a member of the Alter Society.
“It is also my desire that Schoen will be the undertaker, and I will be burried from my home.
“Your truly
“Mary L. Brewster
“(Mollie)"
On May 7, 1958, Mr. Meunier offered the letter for probate as the last will and testament of Mary Lucinda Brewster. The probate was opposed, and, on May 21, 1958, the opposition was maintained, without written reasons. From this judgment, Mr. Meunier prosecutes this appeal.
It is not contended that the letter is not entirely written, dated and signed in the handwriting of the decedent, so that it meets the technical requirements for an olographic will. Neither is it contended that a letter cannot be a will, if it otherwise satisfies the requirements of the law, In Re Billis’ Will, 122 La. 539, 47 So. 884 (1908). (The only question is whether the animus testandi, the testamentary intention, existed when the letter was written.)
*598 There can he little doubt that Miss Brewster wanted Mr. Meunier to be the executor of her estate. The invalid postscript to his will, and the letter offered for probate make this fact abundantly clear.
There is, in fact, no argument as to the basic law applicable in this case, which is as follows:
“Art. 1570. No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated.
“But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided that the act be clothed with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will.
“Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever, whether he has or has not charged any one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law.”
“Art. 1588. The olographic testament is that which is written by the testator himself.
“In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State.”
“Art. 1712. In the interpretation of acts of last will, the intention of the testator .must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.”
“Art. 1713. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.”
Therefore, the question before the court is largely one of fact. Did Miss Brewster intend for the letter to be her will or a codicil to her will?
It is contended by opponents that there ⅛ one portion of the letter which is fatal to* any contention that it was made with testamentary intent. The first sentence of the-, letter reads as follows:
“This is to notify you that I have made you the executor of my estate in my will, which will be found in my bank box.” (Emphasis Added.)
In Succession of Patterson, 188 La. 635, 177 So. 692 (1937), a similar situation was-before the court. A document, reading as. follows, was offered for probate:
“To my three nieces—
“Nena H. Wadleigh
“Pauline W. Market
“Maude W. Barton
“I make a present of One Hundred' shares of my First National Bank stock of Chicago, Illinois to be equally divided between them — which will not be included in my will—
“Gertrude P. Patterson;
“Alexandria, Louisiana
“February first
“Nineteen hundred twenty six.”
In that case it was held that the phrase-“which will not be included in my will”" negatived the intention of the testator that the document should be considered as her will or “[<m] part of one previously made by her.” (Emphasis Added.)
In the Patterson case, supra, the court-cited with approval the following language
“But ‘ * * * in the absence of a testamentary intent, there can be no will. Furthermore, the animus testandi must exist when the instrument is exe *599 cuted or acknowledged, and the intent must apply to the particular instrument produced as a will. A paper is not established as a man’s will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. * * * ’ 28 Ruling Case Law § 3, p. 59.”
It seems clear that, however strong the conviction that the letter of July 27, 1945 expresses the intention of the decedent, that the animus testandi was lacking when the letter was written. It cannot be construed as a will or codicil in the absence of this vital element.
The judgment appealed from, is accordingly, affirmed.
Affirmed.