158 So.2d 293 (1963)
Succession of Mae Viola Cooper SHOWS.
No. 5948.
Court of Appeal of Louisiana, First Circuit.
November 12, 1963.
Rehearing Denied December 16, 1963.
Writ Granted February 7, 1964.
Philip E. Pfeffer, Covington, for appellant.
Barranger, Barranger & Jones, by William J. Jones, Jr., Covington, Pittman & Matheny, by Tom H. Matheny, Hammond, Lancaster, King & LeCorgne, by William McM. King, New Orleans, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LOTTINGER, Judge.
This matter is before us on an appeal taken by Mrs. Daisy Cooper Granier, sister of the decedent, Mae Viola Cooper Shows, from a judgment of the Court below which refused to admit to probate a document purporting to be the last will and testament of Mrs. Shows.
The Trial Judge rendered written reasons for judgment which we herewith set forth in full:
"Mae Viola Cooper Shows died on December 18, 1961. There was offered for probate a document purporting to be a last will and testament of the decedent, which reads, in its entirety, as follows:
 `Dec 3-61
`All to My Sister
 `Mrs. Mae V. C. Shows
 `Mrs. Mae V. C. Shows
 `Shows'
"The probate of the will was opposed by all of the collateral heirs of the decedent.
"On the trial relative to the admission of the will to probate, the following facts appeared to be undisputed:
"1. That the document offered for probate was entirely written, dated and signed in the handwriting of the decedent.
"2. That she was survived by only one sister, Mrs. Daisy Cooper Granier.
"3. That Mrs. Shows had, prior to the death of her husband, *294 made a will in which he was made universal legate, and which contained a number of legal terms and standard testamentary language. The said will was made by her using as a model the will of a friend.
"4. That in the months preceding her death, Mrs. Shows had often discussed with a number of persons the making of her will, and had expressed a desire that certain of her collateral relatives not share in her estate.
"5. That decedent and her sister, Mrs. Granier, the proponent, herein, were very close during decedent's lifetime.
"6. That on December 3, 1961 when the document offered for probate was written, Mrs. Shows believed herself to be dying.
"7. That when she arrived in New Orleans to go to the hospital, she gave an envelope to Mrs. Granier and instructed her to take good care of it.
"8. That Mrs. Granier put the envelope in her purse where it remained until one or two days after Mrs. Shows died.
"9. That when the envelope was opened, the document offered for probate was found attached to a bundle of papers therein with a rubber band. The papers included certified copies of deeds to property, copies of the proceedings in the succession of Mrs. Shows' late husband, and various bills and receipts.
"10. That before her death, Mrs. Shows had often discussed the making of her will with her attorney, Mr. Lindsay Mc-Dougall.
"11. That at no time between the 3rd of December and the time of her death did Mrs. Shows ever indicate to anyone that she had made a will.
"The Court must determine if the above document, in the light of the circumstances outlined herein is a valid will under the law of the state of Louisiana.
"First, as a matter of fact, it satisfies the technical requirement of having been entirely written, dated and signed by the testatrix. Article 1570 of the Civil Code provides that no particular designation need be given to a document purporting to be a will, provided it meets the technical requirements, and provided that `the clauses it contains or the manner in which it is made, clearly establish that it is a disposition of last will.'
"The Court finds that there is nothing in the document as offered to establish clearly or otherwise that it is a disposition of last will. Therefore, its validity as a will can only be established from the surrounding circumstances.
"I have reviewed all of the authorities cited by counsel and in every case where a doubtful document is found to be a valid will there has either been a specific designation therein that the document was a will, or words such as `give' or bequeath' were used therein. "Turning now to the surrounding circumstances, I find very little to guide the Court in considering `the manner in which it is made.' This is purely a question of fact. It is the opinion of the Court that although the attendant circumstances are such as to make it possible to draw the conclusion that the document offered for probate is in fact the last will of the decedent, I do not feel that the circumstances are such that they `clearly establish' that it was intended to be a will.
"I am familiar with all of the authorities relative to the desirability of *295 testacy and of giving to the document offered for probate the favorable consideration which is required by the law.
"I can only state that in the opinion of the Court this document when considered in the light of the circumstances surrounding its writing, does not satisfy the clear requirements of the law of this state.
"Accordingly, probate is denied."
The law is well settled that for a document to constitute one's last will and testament it must, by its own language, show on its face that it purports to dispose of the property of the testator on his death. The codal articles and jurisprudence on the subject have been very recently reviewed by our Brothers of the Second Circuit in the Succession of Faggard, La. App., 152 So.2d 627 (April 1, 1963), from which we quote with approval as follows:
"The document consists of a single sheet of paper bearing the date `Sep 17-57,' underneath which notation, and continuing on the reverse side of the sheet, was a list of names and notations as to certain property. On the lines to the right of the names are certain figures, such as `1 000 00,' `1 500 00,' `2 500 00,' `500 00,' `10 000 00,' `8 000 00,' `33 000 00,' et cetera. Near the bottom of the reverse side of the document is inscribed the name `Alfred Green Faggard.' This sheet of paper was contained in an envelope on which had been written `Copey of will.' This notation was neither dated nor signed.
"The bases of the attack upon the alleged will are: that the document contains no words or language indicative of a testamentary disposition; and, moreover, that (1) it does not purport to be a last will and testament by which Faggard disposed of his property at his death; (2) it is not clothed with any of the forms prescribed for an act of last will and testament; and (3) it does not manifest any intention of the party to make a will.
"The legal requirements essential to the validity of an act of last will and testament are prescribed in the Civil Code. For instance, LSA-C.C. Art. 1469 provides:
"`A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable.'
LSA-C.C. Art. 1571:
"`A testament is the act of last will clothed with certain solemnities, by which the testator disposes of his property, either universally or by universal title, or by particular title.'
LSA-C.C. Art. 1570:
"`No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated.
"`But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided that the act be clothed with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will.

"`Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever, whether he has or has not charged any one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law.'
"[1] Thus, a document, to constitute one's last will and testament, must, *296 by its own language, show on its face that it purports to be the last will and testament of the person whereby he disposes of his property at his death.
"There is no language whatsoever in the document here intended for probation indicating an intent on the part of the decedent to dispose of his property at his death. None of the parties listed are named or referred to as legatees, heirs, or beneficiaries. Nor does the instrument contain the words `give,' `donate,' `will,' `bequeath,' `devise,' or any other word establishing or even indicating that it is a disposition of a last will.
"[2] Before a document may be admitted to probate, it must purport, on its face, to be a last will and testament. Succession of Elliot, 27 La.Ann. 42; Succession of Brand, 162 La. 880, 111 So. 267; Succession of Ravain, 168 La. 413, 122 So. 274.
"[3] Moreover, in the absence of a testamentary intent, which must be established by the language of the document itself, there is no will. Oxley v. Clay, 7 Rob. 425; Succession of Foucher, 18 La.Ann. 409; Theall v. Theall, 7 La. 226, 26 Am. Dec. 501; Succession of Patterson, 188 La. 635, 177 So. 692; Succession or Brewster, La.App. 4th Cir., 1962, 145 So.2d 597 (writs denied). Thus, it appears to have been well settled in the jurisprudence of this State that, for a document to constitute one's last will and testament, the document must show, on its face, that the party intended such document to constitute a testamentary disposition.
"Notwithstanding the fact that the document contains no language indicating an intent on the part of the decedent to dispose of his property at his death, it is contended that the words `Copey of will,' inscribed on the envelope, should be given consideration in the determination of Faggard's intent, and, if the language there employed, together with the language of the other document, is not sufficient to determine the intention of the decedent, then extrinsic evidence may be resorted to in order to determine such intent. Cited are: Succession of Ehrenberg, 21 La.Ann. 280; Lyon v. Fisk, 1 La.Ann. 444.
"In the first of these cases the document was entirely written, dated, and signed by the testator, in which he said: `Mrs. Sophie Loper is my heiress.' A year later, the testator wrote on the back of the document, in his own handwriting, dated, and signed by him, `The legatee's name is correctly spelt Loeper.' Thus, it was not necessary to go beyond the writings of the testator to determine his intention.
"In the second of the cases cited, the question was whether or not two wills, the disposition of which were not repugnant to each other, should be given effect or whether the last will precluded recognition of the first. While the testator, a few hours before his death, expressed his desire that both wills be recognized, the ascertainment of the intention of the testator, through verbal proof of such expression, was not necessary to a disposition of the issue presented. The wills were such that both could be given effect, and, thus, the testator's intent clearly appeared in the language of the testaments themselves.
"Testaments which do not expressly revoke prior wills annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or which are contrary to or entirely different from them. LSA-C.C. Art. 1693.

*297 "[4] The proponents of the will, however, suggest that by parol evidence the decedent's intent that the document constitute his last will may be established under LSA-C.C. Art. 1715, which provides that
"`When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.'
"The provisions of this article do not authorize a resort to verbal testimony as one of the circumstances which may aid in the discovery of the testator's intention.
"Testaments, whether in the olographic form or whether nuncupative or mystic, must be in writing. LSA-C.C. Arts. 1575, 1588.
"Moreover, the former custom of making verbal testaments was abrogated. LSA-C.C. Art. 1576.
"Thus, it was held in the Succession of Maginnis, 158 La. 815, 104 So. 726, in construing Arts. 1715, 1575, and 1576 of the Civil Code, that
"`* * * it is clear that parol proof of the verbal declarations of the testator, made at the time of the making of the codicil in this case, cannot be received as one of the "circumstances which may aid in the discovery of his intention."'
"As was well stated in Succession of Rusha, 158 La. 74, 103 So. 515.
"`Testamentary dispositions can be made only in writing in the form and manner prescribed by law for wills. Hence testamentary dispositions can never be established, as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. And it is but one step from the explaining of a written testamentary disposition by proof of the verbal declarations of the testator, to the establishing of a verbal testamentary disposition; the line of demarcation between the two being very fine, if indeed it exists at all.'
"See, also: Hessmer v. Edenborn, 196 La. 575, 199 So. 647; Succession of Wallis, 203 La. 874, 14 So.2d 749.
"[5] We find nothing in the Succession of Pujol v. Manning, 221 La. 466, 59 So.2d 456, cited by the proponents of the will, that deviates from the aforesaid jurisprudence. In that case, the validity of an olographic will was attacked on the ground of forgery. Parol evidence was admitted of four persons who saw the testator write, date, and sign the purported will. The evidence was admitted not to establish that the document was intended by the testator as a will but to establish that the testator could write, and did entirely write, date, and sign the document in his own hand.
"There are no words or language contained in the document presented for probation which would indicate that the decedent intended to make a last will and testament; nor does the document indicate any intention on his part to dispose of property upon his death. The fact that there was, on the envelope in which the document was contained, a notation, `Copey of will,' is a matter of no importance.
"In the Succession of Bechtel, La.App. Orleans, 1958, 99 So.2d 495, the court was presented with two pieces of paper which were found in one envelope. One of the pieces of paper contained what could have been considered dispositions, but was unsigned. The other slip of paper, which was signed, stated: *298 `The enclosed is my last will.' It was held that no valid will could be created by combining the two documents.
"Thus, under the jurisprudence of this State, the rule is well established that a document submitted for probate must, in the language used in the document itself, establish its conformity with the law as an act of donation mortis causa, and, moreover, evidence the intention of the party to make a will and to dispose of his property. Testimony as to verbal declarations by a testator about his intention to make such a will or to dispose of his property is inadmissible.
"The document tendered for probate in the instant case contains no language indicating a testamentary disposition. Thus, the document, purporting to be a last will and testament, is null and void; such nullity is patent upon the face of the document and may be so decreed in disposing of an exception of no cause of action urged in an action for its probation. Succession of Lewis, La.App. 2d Cir., 1962, 140 So.2d 791 (writs denied)."
Applying the above holding to the case at bar, we find the purported will absolutely devoid of any testamentary language and this for two reasons: In the first place, the document does not state that whatever is to be effected thereby is in any way connected with or to take place upon death. The latter words do not appear nor does the document contain any language connoting a disposition to be effective at death such as "bequeath", "devise", "will" or the like. In the second place, the document fails to show any intent to convey, give or donate. The word "to" therein is a preposition, not a verb. As such it does not convey a "giving", as contended by counsel for proponent for one may "lend to", "go to", "speak to" another as well as "give to".
For the reasons assigned, the judgment appealed from is correct and is therefore affirmed.
Judgment affirmed.
ELLIS, J., dissents.
HERGET, J., dissents with written reasons.
HERGET, Judge (dissenting).
Mrs. Daisy Cooper Granier filed a petition to probate a purported olographic last will and testament of Mae Viola Cooper Shows. The collateral heirs of Mrs. Shows filed opposition to the probate of the instrument.
The Trial Judge, following trial of the opposition, handed down written reasons for judgment, which are in part as follows:
"Mae Viola Cooper Shows died on December 18, 1961. There was offered for probate a document purporting to be a last will and testament of the decedent, which reads, in its entirety, as follows:
 "`Dec 3-61
"`All to My Sister
 `Mrs. Mae V. C. Shows
 `Mrs. Mae V. C. Shows
 `Shows'
"The probate of the will was opposed by all of the collateral heirs of the decedent.
"On the trial relative to the admission of the will to probate, the following facts appeared to be undisputed:
"1. That the document offered for probate was entirely written, dated and signed in the handwriting of the decedent.
"2. That she was survived by only one sister, Mrs. Daisy Cooper Granier.

*299 "3. That Mrs. Shows had, prior to the death of her husband, made a will in which he was made universal legate, (sic) and which contained a number of legal terms and standard testamentary language. The said will was made by her using as a model the will of a friend.
"4. That in the months preceding her death, Mrs. Shows had often discussed with a number of persons the making of her will, and had expressed a desire that certain of her collateral relatives not share in her estate.
"5. That decedent and her sister, Mrs. Granier, the proponent, herein, were very close during decedent's lifetime.
"6. That on December 3, 1961 when the document offered for probate was written, Mrs. Shows believed herself to be dying.
"7. That when she arrived in New Orleans to go to the hospital, she gave an envelope to Mrs. Granier and instructed her to take good care of it.
"8. That Mrs. Granier put the envelope in her purse where it remained until one or two days after Mrs. Shows died.
"9. That when the envelope was opened, the document offered for probate was found attached to a bundle of papers therin (sic) with a rubber band. The papers included certified copies of deeds to property, copies of the proceedings in the succession of Mrs. Shows' late husband, and various bills and receipts.
"10. That before her death, Mrs. Shows had often discussed the making of her will with her attorney, Mr. Lindsay McDougall.
"11. That at no time between the 3rd of December and the time of her death did Mrs. Shows ever indicate to anyone that she had made a will."
The learned Trial Judge concluded, following these findings of fact, the document offered could not be categorized a last will and testament and, accordingly, rendered judgment denying the probate thereof. From this judgment Mrs. Daisy Cooper Granier, the proponent, appealed.
From my review of the record I am in thorough accord with the factual findings by the Trial Court but disagree with the application of the law to such findings.
The law is well settled the courts will, without hesitation, seek to interpret a document presented as the last will of a person so as to lead to testacy, not intestacy, or to give effect to the intention of the testator. Succession of LaBarre, 179 La. 45, 153 So. 15; Succession of Rougon, 223 La. 103, 65 So.2d 104; Succession of Thibodeaux, 238 La. 791, 116 So.2d 525; Succession of Fertel, 208 La. 614, 23 So.2d 234; Succession of May, 109 La. 994, 34 So. 52; LeBleu v. Manning, 225 La. 1087, 74 So.2d 384. These pronouncements of the Court are soundly based on LSA-C.C. Art. 1713, reading as follows:
"Art. 1713. Sense which gives effect
"Art. 1713. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none."
A simple reading of the instrument offered is sufficient to conclude the questioned document is properly drawn in the form of an olographic will and complies with the formalities with which same must be confected. It is conceded the document was written, dated and signed in the handwriting of the testatrix. LSA-C.C. Art. 1588.
The Trial Judge properly, I believe, permitted evidence to be offered as to the circumstances existing upon the composition of the instrument. His findings of fact reveal affirmatively he was of the opinion decedent was cognizant of the formalities *300 and requirements in the confection of a will and testament; that decedent had affirmatively expressed a desire to deprive certain of her collateral relatives from sharing in her estate; that proponent, Mrs. Granier, was the only surviving sister and that during decedent's entire lifetime she and Mrs. Granier were very close; that at the time of the execution of the instrument decedent believed herself to be dying; that she delivered the instrument in an envelope along with other papers to proponent and especially instructed her to take good care of it. Thus, we have factually a picture describing the condition under which the instrument we have before us for consideration was written and delivered to proponent.
Upon adoption of the Constitutional Amendment in 1958 increasing the jurisdiction in the Courts of Appeal and relieving the congested docket in the Supreme Court by transferring to the Courts of Appeal cases theretofore lodged in the Supreme Court, the Chief Justice, in order to accomplish the purpose of disposing of such cases more expeditiously, very wisely, by order, supplied this Court with an additional judge so that we were thereby enabled to sit in two panels. The panel to which the author of this opinion was assigned was fortunate in having as a member Honorable Minos D. Miller, Jr., Judge of the Thirty-First Judicial District Court. In Succession of Gaudin, La.App., 140 So. 2d 384, with Judge Miller as the organ of the Court, the majority held:
"The primary advantage of the olographic will is its simplicity and strangely enough because of this simplicity it is also one of the most foolproof methods of confecting a will. Its simplicity is such that the testator can make this will at any time or at any place and without outside assistance in the form of witnesses or even counsel. Thus the `written, dated, signed' requirement should be understood in ordinary terms. If we inject technicalities into these simple requirements, then we rob the olographic will of its principal assetsimplicity. * * *"
While the author of this opinion dissented, with written reasons, from the conclusion of the Court that extrinsic evidence offered made certain the date of the instrument then under consideration and, though disagreeing with the ruling of the Court that in fact extrinsic evidence could be offered to show the certainty of the date of an olographic willthat issue having been determined by this Court in Succession of Gaudin, La.App., 98 So.2d 711, prior to the date of the author's membership thereon, and in our opinion this prevented reconsideration of the issue as we were bound "by the law of the case"nevertheless, unmistakably the opinion is authority for the doctrine the Court will recognize, where possible, the intention of the testator. From this decision counsel for proponent applied to the Supreme Court of the State of Louisiana for writs, which were granted. However, though in my opinion the decision of this Court was contrary to the well settled jurisprudence announced by the Supreme Court, the legal question involved was not reconsidered by our highest appellate tribunal because, prior to its consideration thereof, the issues were compromised by the litigants and, on joint motion, the case was dismissed.
In Vol. XI, No. 2, Loyola Law Review, 1962-1963, at page 369 thereof, Mr. Timothy G. Schafer in a Comment entitled "Sufficiency of Dates In Olographic Wills" commended the result reached in the Gaudin decision as exemplifying the tendency of the Court to give effect to the expressed intentions of a testator and in the course of his remarks referred to the Succession of Mayer, 144 So.2d 896, La.App., 1962, wherein he expressed the view "Judge Hardy recognized the validity of the reasoning and the inherent justice in Succession of Gaudin, and praised Judge Landry in writing the decision." In the opinion as published in the Advance Sheet of Southern Reporter, Judge Hardy mistakenly placed *301 his accolade on Judge Landry, however the error was corrected in the permanent volume so as to give credit to Judge Miller. In all probability the author of the Article referred to in the Loyola Law Review had before him the opinion as reported in the Advance Sheet.
With full acceptance of the statement a picture takes the place of a thousand words, I have furnished a photographic reproduction of a print hanging in my chambers made by W. Dendy Sadler, published in London in May, 1903, entitled "The New Will" which is here reproduced.
 *302 In my opinion this print graphically portrays a situation of solemnity under which the instrument we have before us for resolution was written. In the proffered print the young man, newly married, with his beautiful wife seated at his side, to the consternation of his attorney, is expressing, without equivocation, his desire and intent to will "Everything to My Wife, Absolutely." In the case before us, Mrs. Shows cognizant of the fact she was departing this life, with full knowledge of the assistance given to her during her life by her sister, the proponent, and likewise in gratitude for such servicespenned the instrument we have before us for consideration. She entrusted it to her sister with affirmative instructions to carefully care for same. Decedent could have had, and had, no other motive in confecting the document than to transmit to her sister, and to her sister only, the worldly goods she possessed.
The words used in the depicted print "Everything to My Wife, Absolutely" are strikingly similar to the instrument we have before us for resolution "All to My Sister." In "The Synonym Finder" by J. I. Rodale, we find the word "All" defined, in part, as follows: "All, n. Total, whole, aggregate, sum, entirety, totality,[1] "everything, completeness, tout ensemble, (Fr.), * * *."
The instrument, of course, could have no effect until and unless it is construed as a valid last will and testament and admitted to probate. In interpreting LSA-C.C. Articles 1713, 1712 and 1570, I am of the opinion an instrument shall be construed to be prima facie the last will and testament of the testator provided same is couched in the formalities of the codal articles and, accordingly, the burden rests upon the opponents to establish the disposition is not a last will. In an analysis of the instrument before us, the word "to" therein is a preposition, not a verb. However, as used, the word "to" is an abbreviation of the infinitive "to give" and the whole instrument as written "All to My Sister" leaves little doubt but that the intention of the deceased was to give to her sister the worldly goods she possessed.
The observation in the majority opinion "the document does not state that whatever is to be effected thereby is in any way connected with or to take place upon death" is answered upon giving consideration to the evidence reflecting the circumstances under which the instrument was admittedly written. We have the unquestioned factual situation of one on her deathbed confecting a disposition of her worldly goods. This factual situation was recognized by the Trial Judge in his findings of fact when he alluded to the fact that at the time of the writing of the document Mrs. Shows believed herself to be dying. The document not being valid as a donation inter vivos inasmuch as same is not in the proper form therefor and furthermore expresses the intent to divest the donor of "all" or "everything" in her estate, which is expressly prohibited by LSA-C.C. Art. 1497, would be a nullity if considered as a donation inter vivos. If considered in the light under which same was written and the form in which same was made, with no evidence contrary thereto, it is clear the instrument was, and is, a testament prepared by decedent in contemplation of death.
Accordingly, I am of the opinion opponents who are required to prove the instrument not to be a donation mortis causa have failed to do so and, as to form and intent, the proffered instrument represents the last will and testament of decedent. The judgment of the Trial Court refusing to admit same to probate should be reversed, and judgment rendered in favor of Mrs. Daisy Cooper Granier, the proponent, recognizing the instrument to be the last will and testament of Mae Viola Cooper Shows and recognizing proponent to be the sole legatee under the will.
For these reasons I respectfully dissent.
NOTES
[1] (Emphasis supplied.)