STEPHENS, J.
Carroll Toms appeals a judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, wherein Melissa Richard, Susan Hinton, Steve Toms, and Karen Toms (the "Residuary Legatees") were named the owners of two deposit accounts formerly owned by Elizabeth Jeane Toms Perritt, the decedent, which were part of her succession. For the following reasons, we affirm the trial court's judgment.
FACTS
Elizabeth Perritt died on January 15, 2017, leaving a notarial testament dated February 9, 2016 (the "testament"). In that testament, she named Stephanie Spangler the executrix of her succession, the Succession of Elizabeth Jeane Toms Perritt, with powers of independent administration. In Article III of the testament entitled "Particular Legacies," Elizabeth *863 articulated several particular legacies, naming the specific item subject to the bequest as well as the legatee by name. Provision 3.7 of that article stated the following:
I own certain certificates of deposits, bank accounts and related items. On certain of those items, I have designated beneficiaries pursuant to "payable on death" provisions authorized by La. R.S. 6:314 and other Louisiana statutory authorizations. Should any of those designations be deemed insufficient because statutory or other formalities were not followed then, in that event, I leave to the person(s) designated in such "payable on death" directions the account or other item identified.
In Article IV entitled "Residual Legacy," she makes the following bequest: "I leave the remainder of my property to Steve Toms, Karen Toms, Susan Hinton and Missy Richard[.] "
During the course of succession proceedings, Spangler filed a rule to show cause to determine the ownership of two deposit accounts (the "deposit accounts") at Home Federal Bank ("Home Federal"), which had previously been owned by Elizabeth.[1] Carroll and the Residuary Legatees were named as defendants on the rule, because each claimed ownership of the deposit accounts. Carroll and two of the Residuary Legatees, Melissa and Susan, appeared at the trial court in response to Spangler's rule to show cause. Specifically, Carroll asserted to be the full owner of the deposit accounts and Melissa and Susan asserted ownership of one-quarter each to the deposit accounts.
A hearing on the matter was held, after which the trial court determined that "a will cannot be made by mere reference to another document that is not itself a [valid] will ... in proper form," and "you cannot look outside of the will to make a definite determination" of the testator's intent. The trial court ruled that the Residuary Legatees were the owners of the deposit accounts, each receiving a one-fourth interest in both accounts, and designated the ruling a final judgment for purposes of appeal. This appeal by Carroll ensued.
DISCUSSION
In Carroll's first assignment of error, he maintains the trial court erred by finding provision 3.7 of the testament to be invalid because the legacy was made by "mere" reference to another document that is not itself a will in proper form. Carroll's second assignment of error is related, and he maintains the trial court erred by finding the same provision to be invalid on the basis that a testator's intent regarding the identity of a legatee and the identity of the object bequeathed cannot be determined without looking outside of the testament. Specifically, Carroll maintains the trial court erroneously misinterpreted Succession of Ledet , 170 La. 449, 128 So. 273, 274 (La. 1930), and the principle that a "will cannot be made by mere reference to another document not itself a will, or to a former will that is invalid because of want of form." Instead, Carroll argues that subsequent jurisprudence has determined that a legacy contained in a will is not necessarily invalid if it references another non-testamentary document in any way. He argues the legacy will only be invalid if the testator's intent cannot be ascertained without looking to that non-testamentary document. Here, Carroll states we need not look to the deposit accounts' "payment on death" instructions in order to determine Elizabeth's intent because the testament is sufficiently clear to determine her intent. Finally, Carroll generally argues *864 that the trial court erred in naming the Residuary Legatees owners of the deposit accounts. On that point, we disagree.
The fundamental rule of interpreting wills is La. C.C. art. 1611, which states in pertinent part: "The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit." The intent of the testator is the "paramount consideration" in determining the provisions of a will. Succession of Williams , 608 So.2d 973 (La.1992) ; Succession of Henderson , 50,475 (La. App. 2 Cir. 2/24/16), 191 So.3d 9, 14, writ denied sub nom. In re Succession of Henderson , 2016-0575 (La. 5/13/16), 191 So.3d 1056 ; Succession of Davis , 35,217 (La. App. 2 Cir. 10/31/01), 799 So.2d 1194.
In the interpretation of a testament, the first and natural impression conveyed to the mind on reading the pertinent clause is entitled to great weight. Succession of La Barre , 179 La. 45, 153 So. 15 (1934) ; Succession of Henderson, supra . Moreover, "A disposition should be interpreted in a sense in which it can have effect, rather than one in which it can have none." La. C.C. art. 1612. The will must be interpreted in a way that furthers, rather than frustrates, the testator's lawful intent. Succession of Waldron , 323 So.2d 434 (La. 1975) ; Succession of Henderson, supra .
In suits contesting a testament, the factual findings of the trial court are afforded great weight and will not be disturbed on appeal in the absence of manifest error. Succession of Davis , supra at 1196,.
As the trial court noted in Succession of Ledet, supra at 273 , "A will cannot be made by mere reference to another document not itself a will." In fact, the Succession of Ledet court explained, "All the French authorities agree on that." Id. But, that case has been further explained and expanded by subsequent jurisprudence holding that extrinsic evidence indeed may be considered to resolve ambiguity in a will. See e.g., Succession of Toney , 2016-1534 (La. 5/3/2017), 226 So.3d 397, 408 ("While extrinsic evidence may be used to resolve ambiguity in a testament, extrinsic evidence cannot cure a testament which is materially defective on its face."); Succession of Henderson, supra at 13 ("Courts may look to extrinsic evidence to clarify ambiguity in a will[.]").
In Hessmer v. Edenborn , 196 La. 575, 199 So. 647 (1940), the court was charged to consider the validity of an olographic revocation by a decedent of his previous last will and testament. The plaintiffs in that case, contesting the revocation and wishing to probate the original will, contended it was necessary to consider a separate writing in order to find the substance of the decedent's intent regarding the revocation. The Hessmer court acknowledged:
[w]here a written instrument purporting to be a last will expresses the intent and substance of the testator's wish but is vague, indefinite, obscure, or ambiguous in the description of a legatee or in the description of the thing bequeathed or of any object referred to in the will, extrinsic testimony is admissible to make clear that which is uncertain. (Emphasis added).
Id. at 649. The supreme court ultimately determined no extrinsic evidence was needed to conclude what the decedent's wishes were, because the substance of his plain, unambiguous words expressed his absolute intent. However, in dicta , the Hessmer court noted, "where a testator refers to another writing for the purpose of manifesting the substance of his wish or desire, and where that wish cannot be ascertained without referring to such writing, *865 the testament ... is invalid." Id. at 650. The court elaborated: "It is permissible for a testator to make reference in his will to another writing for the purpose of rendering certain the object to which the will refers. By doing so he does not incorporate the other writing into his will." Id. (Emphasis added).
Presumably, provision 3.7 of Elizabeth's testament was an attempt to avoid a situation where La. R.S. 6:314 was not strictly adhered to, the pertinent part of that statute providing:
A. Upon the death of a depositor who has deposited a sum in any bank account evidencing an intention that upon the death of the depositor, the funds shall belong to one or more named beneficiaries of the depositor, the bank may pay the deposit, together with the dividends or interest accruing thereto, to the named beneficiaries for whom the deposit was made. The depositor shall give to the depository bank an affidavit in authentic form or an act under private signature executed in the presence of an officer or a branch manager of the depository bank and two additional persons, stating the names of one or more beneficiaries. The bank may conclusively rely on this affidavit or act for the disbursal of funds. Upon receiving a death certificate, the bank may disburse funds to the named beneficiaries.
B. The title of such an account must include the terms "in trust for", "as trustee for", or "payable on death to", such beneficiary or beneficiaries. Such beneficiaries must be specifically named in the deposit account records of the bank.
....
F. The provisions of this Section shall apply notwithstanding the fact the decedent designates a beneficiary by last will and testament. The provisions of this Section shall not prohibit any right of forced heirship or the collation or collection of funds due any spouse, heir, legatee, creditor, or other person having rights or claims to funds of the deceased depositor.
Although Elizabeth did complete the requisite documents for other Home Federal accounts she owned and the beneficiaries were put into ownership of those accounts, she did not complete the requisite affidavits that would have served to transfer these particular deposit accounts to Carroll as a "payable on death" ("POD") beneficiary. Because the statutory requirements were not adhered to for these deposit accounts, it is necessary to look to the testament to determine her intent.
We acknowledge that consideration of extrinsic evidence is not necessarily impermissible; outside documents might be necessary to render clear bequests which on their face might be ambiguous. However, in this case the substance of Elizabeth's bequest can only be acted upon by looking outside of her testament to extrinsic evidence-which itself is unclear. Only by looking to a non-testamentary document can her intent be ascertained, i.e. , the purported POD instructions on the disputed deposit accounts. Therefore, the provision is invalid. In other words, her testament is not sufficiently clear to determine her intent regarding either a legatee or property bequeathed, because the substance of the provision cannot and does not stand alone. Initially, we observe that the testamentary provision does not name a legatee (or class of legatee) to whom the bequest is made or the particular bank account(s) subject to her bequest. Further, the testamentary provision requires the examination of extrinsic evidence of indeterminate certificates of deposit or bank accounts Elizabeth might have owned. We do not contend that all testamentary provisions *866 that require some extrinsic evidence are invalid, because clearly the jurisprudence allows such. However, this particular provision does not sufficiently determine the substance of Elizabeth's intent, and the necessary extrinsic evidence is not simply used for the purpose of rendering clear her intent.
Taken one more step, the bank documentation relied on by Carroll is questionable itself because if we look at the deposit accounts in question, they do little to illuminate further Elizabeth's intent. We acknowledge that Home Federal's internal records seemingly indicate what looks to be a POD designation in Carroll's favor-a notation in the bank records. But what is certainly unclear is who actually made that designation-and provision 3.7 of the testament pertains to those "... items, I have designated beneficiaries[,]" with the "I" being Elizabeth (emphasis added). There is no evidence that Elizabeth actually made that designation of Carroll as the beneficiary on Home Federal's bank records. In fact, the extrinsic evidence tends to show she did not intend to make him the beneficiary.
Keith Dauzat, a senior branch manager with Home Federal who was familiar with Elizabeth's business at the bank, testified in deposition that Elizabeth actually completed and returned to Home Federal the requisite affidavits for other accounts she had on deposit with the bank and payment of those accounts was made to the beneficiaries. However, Dauzat explained that Elizabeth did not complete and return the requisite documents for the disputed deposit accounts, even though documents for those two accounts had been sent to her along with the other accounts. The evidence shows that Elizabeth assigned POD designations on other accounts at Home Federal, but specifically not for the two in question; thus the extrinsic evidence Carroll relies on does not conclusively prove Elizabeth's intent as to those two accounts. Notably, given that she returned to Home Federal completed forms for some accounts but not the subject deposit accounts, it is reasonable to conclude Elizabeth's intent was not to designate POD status to Carroll.
The facts of this case are not analogous to those in Succession of Baskin , 349 So.2d 931 (La. App. 1 Cir. 1977), writ denied sub nom. Matter of Succession of Baskin , 350 So.2d 1211 (La. 1977), relied upon by Carroll on appeal because in that case the extrinsic evidence considered in conjunction with the will's provisions at issue indicated, without further speculation, the proper legatee. Such is not the case here-the testament's questionable provision along with the extrinsic evidence do not conclusively tell, without further speculation, that Carroll was the intended legatee.
The jurisprudence on this issue is clear. "Where a testator refers to another writing for the purpose of manifesting the substance of his wish or desire, and where that wish cannot be ascertained without referring to such writing, the testament ... is invalid." Hessmer, supra at 650 (emphasis added). Further, Hessmer instructs that the outside writing "render[s] certain" the object of the bequest. Here, the substance of Elizabeth's wishes cannot be ascertained without referring to another writing, which writing does not conclusively indicate or "render certain" the legatee. Thus, we hold this particular provision is invalid, although not necessarily for the precise reasons articulated by the trial court. We determine the final judgment was not in error, and the Residuary Legatees are owners of the deposit accounts.
CONCLUSION
Considering the foregoing, the trial court's judgment in favor of Melissa "Missy"
*867 Richard, Susan Hinton, Steve Toms, and Karen Toms is affirmed. All costs of these proceedings are assessed to Carroll Toms.
AFFIRMED.
WILLIAMS, J., concurs with written reasons.
STONE, J., concurs.
I am writing separately because I do not agree that provision 3.7 of the will is invalid.
The testator's intent controls the interpretation of the testament. In the interpretation of a will, when the testator's intent cannot be ascertained from the language of the testament, the court may be aided by any competent evidence. La. C.C. art. 1611. A testator may make reference to another writing in his will for the purpose of making certain the object to which the will refers. Hessmer v. Edenborn , 196 La. 575, 199 So. 647 (1940).
Although the trial court correctly stated that a person cannot make a will by mere reference to another document not itself a will, we do not have that situation in this case. Here, the testator has a valid will with an ambiguous bequest leaving bank accounts owned at death to the persons who she previously had designated as beneficiaries in documents submitted to the bank. Under Article 1611 and Hessmer , I think a court can refer to the bank documents to determine the intended recipients of the specific accounts that the testator sought to bequeath in the will. Thus, even though provision 3.7 of the will is ambiguous and requires reference to extrinsic documents to make certain the identity of the legatees, such a will provision is valid. I note that with three other accounts, reference was made to the extrinsic bank documents to determine the legatees of those accounts.
The problem for appellant is that the decedent did not sign the affidavits to designate him as a pay-on-death beneficiary for accounts # 0466 and # 9901. Consequently, the record supports a finding that provision 3.7 of the will does not leave those accounts to him. Thus, based on the will language, the trial court did not err in concluding that these accounts are owned by the residual legatees.

Those accounts are specifically numbered 0201029901 and 1000000466.